# AMERICAN ICE COMPANY *v.* EASTERN TRUST AND BANKING COMPANY.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 95. Argued December 2, 1902.—Decided February 23, 1903.

Although, as held in *Farmers' Loan & Trust Company* v. *Penn Plate Glass Company*, 186 U. S. 434, a covenant in a mortgage to keep the property insured does not run with the land so that an actual grantee taking subject to the mortgage comes under a primary obligation to insure, the case is different, under the peculiar language of the covenant contained in the mortgage herein, and where the mortgagor after failing to insure in accordance with the covenant transfers the property to a voluntary assignee. In such case the insurance taken out by the assignee, who stands in the shoes of the assignor, must be assumed to be taken out in fulfillment of the mortgagor's covenant, and in the event of loss the amount collected under the policies inures to the benefit of the mortgagee, and cannot be retained by the assignee as representing his interest, or that of general unsecured creditors, in the equity of the property.

THE appellee herein was the complainant in the court of original jurisdiction and commenced its suit in the Supreme Court of the District of Columbia to foreclose a mortgage ex-

ecuted by the American Ice Company, one of the appellants, to the appellee as trustee, etc. Judgment of foreclosure was entered, from which an appeal was taken to the Court of Appeals of the District, where it was modified by reducing the amount of the indebtedness found due by the trial court and secured by the mortgage, and as so modified the judgment was affirmed. 17 D. C. App. 422; also reported on former hearing in the Court of Appeals, 14 D. C. App. 304. Another phase of the controversy appears in 6 D. C. App. 375 and 169 U. S. 295.

The facts are somewhat numerous, but for the purpose of presenting the question discussed in the opinion herein the following only are necessary to be noticed:

The American Ice Company was a Maine corporation, and in that State it made a mortgage to the appellee, which was also a Maine corporation, to secure the payment of bonds executed by the ice company to the amount of $40,000, payable in installments of $5000 each. The bonds were payable to the mortgagee or bearer, and all were duly sold and delivered to various persons for full value before maturity. The property mortgaged embraced real estate in Maine, and also certain real estate which the mortgagor claimed to own in the city of Washington, D. C., opposite square 270, and being within the limits of the bed of the Potomac River. On this property were erected a wharf and ice houses for storing and distributing the ice gathered in Maine and shipped to Washington. The mortgage contained the following provisions as to insurance:

" Article 7. The American Ice Company hereby expressly covenants and agrees to pay any and all taxes, assessments and governmental charges assessed or laid upon the property herein conveyed or intended so to be, and also to keep said premises and property at all times insured in such insurance companies as may be approved by the trustee, in such amounts as shall reasonably protect all the insurable property, payable in case of loss to the trustee as its interest may appear. In case of loss the insurance money may be applied by the trustee toward the renewal of or additions to the property destroyed or injured, or at the option of the trustee the money may either be retained

and invested in such securities as it approves, as a sinking fund for the redemption of the bonds when due, or be applied to the payment of the principal of such of the aforesaid bonds as may be at the time due ·and unpaid and of the interest which may at that time have accrued upon the principal and be unpaid, without discrimination or preference; and ratably to the aggregate amount of said unpaid principal and accrued and unpaid interest, rendering the surplus, if any, to the American Ice Company, or to whomsoever may be lawfully and equitably entitled to receive the same."

The mortgagor company thereafter fell into financial difficulties, defaulted in the payment of its bonds and other indebtedness, and on October 13, 1893, it made an assignment to William G. Johnson, the other appellant, as assignee, for the benefit of its creditors. The assignee took possession of the real property mortgaged and situate in Washington, and in November, 1896, took out fire insurance policies to the extent of $3000 on the buildings and improvements on the Washington property, the premiums being paid from the assigned estate. On February 11, 1896, the buildings and improvements were destroyed by fire and the insurance moneys were paid to the assignee, who set up in his answer to the bill of foreclosure that he had taken out the insurance upon his separate interest as owner of the equity of redemption for the benefit of all the creditors of the ice company, secured and unsecured; while the trustee claims the insurance moneys for the benefit of the bondholders.

The trial court decreed the foreclosure of the mortgage and sale of the mortgaged premises, and in the event that the proceeds arising therefrom should be insufficient to pay the bonded indebtedness, it further decreed that the assignee should pay to the trustee the insurance moneys, or so much as might be necessary to pay the deficit, and that the trustee should apply the same as directed.

*Mr. William G. Johnson* for appellants.

*Mr. Benjamin F. Leighton* for appellee,

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The appellants have made several assignments of error which have been argued before us, but the only one we think it necessary to notice is that which relates to the disposition of the moneys received by the assignee on account of the insurance effected by him upon the property destroyed by fire.

The assignee claims to be entitled to pay these moneys for the benefit of all the creditors, unsecured as well as secured, while the appellee, the trustee in the mortgage, demands that the moneys should be paid to it for the purpose of reducing the deficit which may arise from the sale of the mortgaged premises, and the courts below have so decreed. The claim of the appellee is founded upon the language used in the mortgage, by which the ice company was to keep the "premises and property at all times insured . . . in such amounts as shall reasonably protect all the insurable property. . . . In case of loss the insurance money may be applied by the trustee toward the renewal of or additions to the property destroyed or injured, or, at the option of the trustee, the money may either be retained and invested in such securities as it approves, as a sinking fund for the redemption of the bonds when due, or to be applied to the payment of the principal" of such bonds, etc. This language, it is urged, takes the case out of the ordinary rule that a simple covenant to insure contained in a mortgage does not run with the land. The assignee appellant founds his claim upon the assertion that, as assignee, he was the owner of the equity of redemption, having an insurable interest in the premises as such, and that, in fact, he intended such insurance for the benefit of all creditors, and not as a fund for the security of the bondholders alone.

In *Farmers' Loan & Trust Co.* v. *Penn Plate Glass Co.*, 186 U. S. 434, we had occasion to examine the nature and effect of a covenant to insure contained in a mortgage, and we concluded that such a covenant does not run with the land, so that one taking a conveyance subject to the mortgage comes under a primary obligation to insure. In that case the mortgage was

foreclosed and the property bid in at the judicial sale, and the grantee of the Master took out insurance in his own name for the purpose of insuring his own interest in the premises which he had purchased, and he repudiated in terms any obligation to insure for the benefit of the mortgagee, and accordingly the policies were issued, and they stated they did not cover the mortgagee's interest in the premises.

Here there is in substance no difference between the mortgagor and its assignee for the benefit of creditors, so far as this question is concerned. The mortgagor had indeed failed to insure, as it had covenanted to do, but when it transferred the legal title of the property to its voluntary assignee, he stood in the shoes of his assignor, and when he took out insurance policies upon the property he in effect fulfilled the obligation which had rested upon the mortgagor to insure, and the insurance thus becomes by virtue of the covenant a security for the payment of the bonds secured by the mortgage. This does not make a case of a covenant to insure running with the land as against a subsequent purchaser of the property for value, but, as we have said, it is simply the case of a taking out of insurance by a voluntary assignee having no beneficial interest in the property, and when such assignee insures the premises under the circumstances herein stated, with such a covenant in a mortgage, the insurance moneys enure to the benefit of the bondholders secured by the mortgage.

It was conceded in the court below that, as a general proposition, a covenant to insure was a mere personal covenant, and did not attach to and run with the land, but it was held that the peculiar language of this mortgage took it out of that rule.

Mr. Chief Justice Alvey said in the Court of Appeals in this case, 14 App. D. C. 331:

" It is very clear, that, by the terms of the covenant, it had relation to the land, and its principal object was to keep and maintain the buildings on the property in condition for carrying on the ice business. This was the great object of the insurance required, as means of security to the bondholders. Without this, the property, by fire, might be rendered of little value, and the bondholders be left without security. By means

of the insurance it was intended that the property should be maintained as security; and hence it was provided, primarily, that the insurance money might be expended in renewal of or adding to the buildings. In such cases it has been repeatedly held, that the covenant does run with the land, at least in an equitable sense; and where an insurance has been obtained, though by an assignee, and a fire has occurred, and the insurance money has been received, a court of equity has held that the insurance money should be applied for the benefit of those for whose protection the original covenant was made."

The cases of *Vernon* v. *Smith*, 5 Barn. & Ald. 1, 7; *Thomas* v. *Vonkapff*, 6 Gill & John. 372; *Miller* v. *Aldrich*, 31 Michigan, 408, 411; *Ellis* v. *Kreutzinger*, 27 Missouri, 311; *Nichols* v. *Baxter*, 5 R. I. 491; *Masury* v. *Southworth*, 9 Ohio St. 340, 348, and *In re Sands Ale Brewing Company*, 3 Biss. Rep. 175, were cited by the Chief Justice in support of his contention.

In the case of *Wheeler* v. *Insurance Company*, 101 U. S. 329, it was held that where a mortgagor is bound by his covenant to insure the mortgaged premises for the better security for the mortgagees, the latter have to the extent of their interest in the property destroyed, an equitable lien upon the money due from the policy taken out by him, and that this equity exists, although the contract provides that, in case of the mortgagor's failure to procure and assign such insurance, the mortgagees may procure it at the mortgagor's expense.

So in this case, we practically have a fulfillment of the mortgagor's covenant to insure, because its voluntary assignee, standing in its shoes, did himself insure the premises, and such insurance enures to the benefit of the mortgagee, because the assignee is a voluntary one, and is but carrying out an obligation imposed originally upon his assignor. The peculiar language of the mortgage upon the subject of insurance takes it out of the general rule governing such covenants.

We think the case at bar is not covered by the case of *Trust Company* v. *Penn Glass Company*, 186 U. S. 434, *supra*, and that the court below made the proper decree in relation to the insurance moneys.

We have examined the other assignments of error argued

before us, but are of opinion that they are clearly untenable and were properly disposed of by the court below.

Finding no error in the record, the judgment is

*Affirmed.*