ARTHUR A. HYDE, EXECUTOR OF THE LAST WILL AND TESTAMENT OF MARY T. HYDE, DECEASED, APPELLEE, V. HARTFORD FIRE INSURANCE COMPANY ET AL., APPELLANTS.

FILED DECEMBER 2, 1903.   No. 13,059.

1. **Mortgage: INSURANCE: EQUITABLE LIEN.** Where the owner of real estate binds himself, in a mortgage executed thereon, to keep the premises insured for the protection and indemnity of the mortgagee, such mortgagee will have an equitable lien upon the money due on a policy taken out by the mortgagor, although the policy may run to the mortgagor alone.

2. **Assignment: RIGHTS OF ASSIGNEE.** Where a mortgagee assigns a mortgage, containing a covenant on the part of the mortgagor to keep the premises insured as further security, and agreeing that the mortgagee may procure such insurance if the mortgagor fails to do so, and in his assignment guarantees the payment of the mortgage indebtedness, and, thereafter, such assignor of the mortgage becomes the owner of the mortgaged premises, and takes out insurance thereon in his own name to the full amount of the insurable interest of the mortgaged property, and a loss occurs while his liability as guarantor of the mortgaged debt is still in full force, the then owner of the mortgage will have an equitable lien on the proceeds of the policy to the extent of his interest in the property destroyed by the fire.

3. **Statute of Limitations.** The fact that the statute of limitations had barred a personal action against the assignor on his guarantee of payment when suit was commenced by the assignee to establish her claim to the proceeds of the policy, does not in any manner release or impair her equitable lien upon such proceeds.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Halleck F. Rose* and *Flansburg & Williams,* for appellants.

*Ames & Ames, contra.*

DUFFIE, C.

December 26, 1885, one Van Aukin, being the owner of lots 313 and 314 in the village of Orleans, Harlan county, Nebraska, made to the appellant L. H. Kent his note for $1,000, due December 26, 1890, and secured the same by mortgage upon the lots above named. The mortgage contained the following stipulation:

"And we hereby agree to keep the buildings upon said premises insured from the date of this mortgage until it is paid, for the sum of one thousand five hundred ($1,500) dollars, and make the policy payable and deliver it to said mortgagee or his assigns, and if we fail to keep said buildings insured as above agreed, said mortgagee or his assigns may so insure them, and the premiums therefor shall be added to and made a part of the principal sum hereby secured and shall bear the same rate of interest."

Before the maturity of the note, L. H. Kent sold the same to Mary T. Hyde and indorsed the same as follows: "I hereby guarantee the payment of this note and all coupons attached." He also assigned the mortgage, which assignment was duly recorded in Harlan county. In December, 1892, Mary T. Hyde brought an action in the district court for Douglas county, seeking to recover the amount of the note from Kent on his guaranty of payment, but no summons was properly issued or served upon Kent until April, 1896, and judgment went in favor of Kent, the court holding that the statute of limitations had barred the action. After his sale of the note to Mrs. Hyde, Kent purchased and became the owner of the mortgaged premises, his deed reciting that he took the same subject to the mortgage. After becoming the owner in fee of the mortgaged premises, and on the 15th day of August, 1895, Kent insured the building on said lots in

the sum of $2,000, $1,000 of which were in the Hartford Fire Insurance Company, the policy being payable to himself. November 6, 1895, the buildings covered by the policy were totally destroyed, and December 30, 1895, the company paid him $1,000, the full amount of the policy. At the time of making payment the company took from Kent a bond of indemnity, to the effect that he would save the company harmless in case it were compelled to pay the amount of the policy to another party. July 18, 1898, Mary T. Hyde, the owner of the note and mortgage, departed this life in the state of Connecticut, and Arthur A. Hyde, plaintiff and appellee, is the duly appointed executor of her estate. December 12, 1899, the plaintiff commenced this action against the insurance company, claiming, as the owner of the mortgage, to have an equitable lien upon the amount due upon the policy issued to Kent, and asking judgment against the company for the sum of $1,000, with interest from November 11, 1895. Upon the suggestion of the company that Kent had been paid the amount of the policy, he was made a party defendant to the action, and Kent and the company filed their separate answers setting up the facts above set forth, and in addition thereto the company set out the bond of indemnity made to it by Kent at the time of payment to him of the loss under the policy, and concluded with a prayer as follows:

"Wherefore this defendant prays to be dismissed hence without day and to recover its costs herein expended, or, in the alternative that the court finds, on the hearing, that there is a subsisting liability on account of the cause of action set forth in the petition on the part of this defendant and defendant Kent to plaintiff, then, as between the defendants, the liability of defendant Kent be held primary and that of this defendant secondary only; and for such other, further and different relief as to the court may seem just and equitable."

The case was tried upon a stipulation of facts which, in addition to the matters above stated, contains the following:

"It is agreed that, at the time of the destruction of the buildings situated upon the premises herein described, the same had been and were by said L. H. Kent insured in the sum of $2,000 and that the value of said buildings did not exceed the sum of $2,000; that all of said insurance was collected by said L. H. Kent and retained by him."

It was further stipulated that, at the time the buildings were burned, Kent was personally liable upon the Van Aukin note by reason of his guarantee, and that said note was not five years past due, and that, at the time of the loss of the buildings and the payment of the amount of the policy to Kent, the insurance company had actual knowledge of the existence of the mortgage to the plaintiff's testatrix and that the same was wholly unpaid. Upon the hearing the court entered a decree, finding that the insurance company had due notice of the provisions of the mortgage and that, by its terms, the loss under the policy in controversy was payable to the mortgagee; that Kent, in obtaining the policy of insurance mentioned in the petition, had due notice of the mortgagee's rights and should be held to have insured for her benefit; that the defendant insurance company paid the policy to Kent, and that Kent, at the time of the loss and payment of the money, was personally liable to the plaintiff for the debt mentioned in the petition: "That, by reason of the premises, the obligation of the defendant, the Hartford Insurance Company, to the plaintiff is that of principal debtor, but that such liability to the plaintiff, as herein found, is, as between said insurance company and the estate of Lewis H. Kent, that of surety only, and the primary and ultimate liability therefor is upon the estate of said Lewis H. Kent; and the said fire insurance company, in case of its payment of the sum due to plaintiff, as found by this decree, is entitled to exoneration and to be reimbused by the estate of Kent for any sum so by it paid, including interest and costs." From this decree the defendants have appealed.

It is well established that if a mortgage contains a covenant or condition that the mortgagor shall keep the premises insured for the benefit of the mortgagee, and the mortgagor takes out a policy in his own name and does not assign it or make it payable to the mortgagee, and a loss occurs, such a covenant creates an equitable lien in favor of the mortgagee to the extent of his mortgage interest upon the money due under the policy, and this too, even if the mortgage contains also a provision that the mortgagee, in default of an insurance by the mortgagor, may effect an insurance at the expense of the mortgagor. *Nichols v. Baxter,* 5 R. I. 491; *In re Sands Ale Brewing Co.,* 3 Biss. (U. S.) 175; *Carter v. Rockett,* 8 Paige Ch. (N. Y.) 436; *Thomas' Administrators v. Von Kapff's Executors,* 6 Gill & J. (Md.) 372; *Giddings v. Seevers,* 24 Md. 363; *Providence County Bank v. Benson,* 24 Pick. (Mass.) 204; *Miller v. Aldrich,* 31 Mich. 408; *Chipman v. Carroll,* 53 Kan. 193. Some of these cases hold that a covenant to insure made in a mortgage is a covenant which runs with the land, and, wherever that holding obtains, it is plain that a subsequent purchaser of the land would be bound by the covenant, and any insurance obtained by such subsequent purchaser would inure to the benefit of the mortgagee. There are other cases holding that the agreement to insure is personal in its character, and does not affect the land or run with it, and is merely collateral and incidental. *Cromwell v. Brooklyn Fire Ins. Co.,* 44 N. Y. 42; *Dunlop v. Avery,* 89 N. Y. 592. In the states where this doctrine is held it is probable that a grantee of the land would not be bound by his grantor's agreement to insure for the benefit of an existing mortgagee, and that any insurance obtained by him would inure to his own benefit, in the absence of circumstances which would make it his duty to protect the mortgagee. In the case at bar, Kent was the mortgagee. For his own benefit, and the benefit of any party to whom he might assign the mortgage, he had inserted therein an agreement upon the part of the mortgagor to insure the buildings on the

property to the amount of $1,500 and to keep them so insured until the mortgage was fully paid. This agreement was intended as additional security, and to protect the mortgagee against a species of waste which accident might produce. It is apparent that the lots upon which the buildings stood were inadequate security for the amount of the loan, and that the buildings, or, in case of their destruction, the insurance provided for, constituted the principal security. The note secured by this mortgage Kent sold to a good faith purchaser and, by his indorsement, guaranteed the payment. After this, and while still liable upon his guarantee, he purchased the mortgaged premises and became the owner of the fee. He then took out insurance payable to himself to the full value of the buildings. Upon their destruction by fire he claimed and obtained payment from the companies. The Hartford company, with full knowledge of the plaintiff's claim and with such apparent appreciation of its justice as to require Kent to indemnify against it, paid him the loss. Whether or not the agreement to insure was a covenant which would run with the land in this state, where a mortgage does not convey the legal title but is a mere security, we need not discuss. The facts are that Kent, after having sold a mortgage requiring the mortgagor to insure as further security and to protect against waste which a fire should occasion, and providing that the mortgagee might do so in case the mortgagor failed to carry out his agreement, purchased the mortgaged property, and took out insurance in his own name, and for his own benefit, to the full value of the insured property, thus preventing the then holder of the mortgage from obtaining any insurance, and cutting off her right to protect herself in this way from a loss which must occur in case the buildings covered by the mortgage were destroyed by fire. We do not think that a court of equity can sanction the claim now made by Kent, that this insurance was entirely for his own benefit and that he is entitled to the entire proceeds. To do so would be to offer a premium on the conduct of a mortgagor who vio-

lates his agreement to insure for the benefit and protection of his mortgagee. After executing a mortgage like the one in question, he could save to his family the insurable value of his improvements, by the easy process of refusing to take out a policy for the benefit of the mortgagee, and then, by transferring the title to his wife or some other relative, enable them to effect an insurance to the full amount which the property will bear, and to recover the insurance in case of loss. It would also afford temptation to collusive action between the original parties to the mortgage, as the case under consideration fully illustrates. The mortgagee, after selling his mortgage, presumably for the full amount of his loan, arranges with the mortgagor to take a conveyance of the premises, to effect insurance on the improvements, and to divide the proceeds of the policy in case of loss. We do not wish to be understood as intimating that such an agreement was made in this case. There is nothing in the record to cast suspicion on the good faith of the parties, but we refer to what might be accomplished as a reason for holding that Kent, who transferred this mortgage to the plaintiff and who made himself liable for its payment, should be held to have effected the insurance for her benefit. Kent being the vendor of the mortgage, and the guarantor of its payment, can not, in equity, become the owner of the mortgaged premises and, by securing insurance in his own name, claim the proceeds of the policy as against the holder of the mortgage, for the payment of which he had made himself liable. If, when he became the owner of the mortgaged premises, he had assumed and agreed to pay this mortgage, no one would question the right of the plaintiff to an equitable lien on insurance effected in his own name; and we can see no reason why the same rule should not apply when he made himself liable for the mortgage debt by his contract guaranteeing its payment.

Another fact which, to our minds, adds strength to the plaintiff's claim is this: When he transferred the mortgage to Mrs. Hyde, he not only transferred the mortgagor's

agreement to keep the property insured for the security of the mortgagee, but also the further agreement to allow the mortgagee to make such insurance in case the mortgagor failed to do so. Can it be said that, under these circumstances, there is any principle of equity which will justify Kent in securing to himself insurance to an amount which prohibits further insurance for the benefit of the holder of the mortgage which he himself negotiated and for which he stands sponsor. We can not agree that such a holding would be equitable or just, or that a court of equity ought to countenance a transaction bearing on its face so palpable a wrong to the appellee. The fact that the statute has barred a personal action against Kent on his guarantee of payment of the note, does not in any way release or impair the plaintiff's equitable lien on the proceeds of the insurance policy taken out by Kent. This subject is fully discussed in *Connecticut Mutual Life Ins. Co. v. Dunscomb,* 108 Tenn. 724.

We recommend an affirmance of the judgment.

KIRKPATRICK, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.