[No. 16174. Department One. May 16, 1921.]

## L. J. STEBBINS, *Respondent*, v. WESTCHESTER FIRE INSURANCE COMPANY, *Appellant*.[1]

INSURANCE (109) — ESTOPPEL OR WAIVER — KNOWLEDGE OF AGENT. Knowledge of an agent who issues an insurance policy, concerning the condition and title of the property insured, is the knowledge of the insurance company.

SAME (110) — ESTOPPEL — FALSE ANSWERS BY AGENT. Where an insurance agent issues and delivers a fire policy containing forfeiture clauses contradictory to existing facts known to him at the time, the company issuing the policy will be held to have waived such inconsistent provisions.

SAME (91) — FORFEITURE OF POLICY — CHANGE IN TITLE. The provision of a fire insurance policy voiding it "if, with knowledge of the insured, foreclosure proceedings be commenced or notice given for the sale of any property covered by this policy by virtue of any mortgage or trust deed," would not apply to the insured's notice of foreclosure proceedings in case of other classes of liens.

SAME (109) — ESTOPPEL OR WAIVER — NOTICE TO AGENTS. Where a fire insurance company was estopped to deny its liability because of its agent's knowledge at the time of issuance of the policy that proceedings for the foreclosure of a lien had been commenced against the property, it would be estopped to defend on the ground that the insured had notice of the sheriff's foreclosure sale, since the latter was but a natural consequence of foreclosure proceedings.

SAME (137) — PROOF OF LOSS — WAIVER BY OFFICERS OR AGENTS. Formal written notice of loss required by a policy of fire insurance to be given by the insured to the company may be waived by the adjuster for the company.

[1]Reported in 197 Pac. 913.

SAME (146)—RIGHT TO PROCEEDS—POLICY FOR BENEFIT OF MORT-
GAGEE. Where a contract for the sale of property provided that the
purchaser should "keep the buildings on said premises in good re-
pair and insured in such sum as they will reasonably bear loss if
any payable to the first parties" (the vendors), insurance taken out
by the purchaser in his own name inures to the benefit of the
vendor, and in case of loss the vendor is entitled to priority in the
insurance moneys as against the liens of other claimants against
such fund.

SAME (150)—RIGHT TO PROCEEDS—ASSIGNMENTS—PRIORITY. Where
insured assigned one-half of the proceeds of a fire insurance policy
to his attorney employed to collect the insurance, and later assigned
more than one-half of the face of the policy to a creditor, the claim
of the attorney in the insurance money is entitled to priority against
the creditor because senior in time.

Appeal from a judgment of the superior court for
Spokane county, Hurn, J., entered April 17, 1920, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action on an insurance policy. Affirmed.

*M. E. Mack,* for appellant Westchester Fire Insur-
ance Company.

*Gram, Hull & Barrett,* for appellant and respondent
Stebbins.

*H. G. Twomey,* for appellant and respondent Smyser.

*Caleb Jones* and *Danson, Williams & Danson (R. E.
Lowe,* of counsel), for intervener and respondent
Pugsley.

BRIDGES, J.—There are two distinct branches to this
case. The first concerns the liability of the West-
chester Fire Insurance Company on a policy of insur-
ance issued by it, and the second is to determine who
is ultimately to receive the insurance money in the
event we hold the insurance company liable.

We will proceed at once to the first branch. This part
of the case was tried to a jury, which returned a verdict
against the insurance company. Inasmuch as the chief

defenses revolve around certain clauses of the insurance policy, we will here call attention to them. The policy was dated July 9, 1918, and ran to L. J. Stebbins, and was for $3,300 on the dwelling which was destroyed, as we will hereinafter mention. It provided that the policy should be void "if the interest of the insured in the property be not truly stated"; or "if the hazard be increased by any means within the control or knowledge of the insured"; or "if the interest of the insured be other than unconditional and sole ownership"; or "if, with the knowledge of the insured, foreclosure proceedings be commenced or notice of sale of any property covered by this policy by virtue of any mortgage or trust deed."

There was testimony from which the jury might have found the facts to be as follows: In 1907, Stebbins, the plaintiff, entered into a written contract with one J. O. Pugsley and wife for the purchase of a ten acre tract of land located in Spokane county, Washington, the payments to be made in installments. After Stebbins had paid a considerable portion of the purchase price, litigation arose over the contract. Pugsley undertook to forfeit all of Stebbins' rights. That litigation reached this court by appeal. *Pugsley v. Glenn*, 98 Wash. 570, 168 Pac. 172. We held, in substance, that while Pugsley could not terminate the contract, yet he had a right to enforce collection of the balance of the purchase price and to impress the land with a lien to secure the payment of such balance. Shortly thereafter and on February 7, 1918, Pugsley and wife commenced suit against Stebbins for the balance due under the contract and sought to establish a lien upon the property and to foreclose it, all in accordance with our previous decision. On July 9, 1918, the policy of insurance involved here was issued. On

July 23 following, the Spokane court entered judgment in favor of Pugsley and against Stebbins in excess of $3,000, being the balance due under the contract of sale, and in the same action declared such amount to be a lien on the property, and entered a decree foreclosing the lien and directed that the property be sold for the purpose of raising money to satisfy the judgment. At once after entry of this decree, the sheriff gave notice of the sale of the ten acre tract, including the house in question here, which was located on the land, and such sale, according to notice was to take place on August 24, 1918. Early in the morning of that day, and a few hours before the sale was to take place, the dwelling covered by this policy of insurance was completely destroyed by fire.

The outstanding facts, therefore, are that, at the time the policy of insurance was written and delivered, Stebbins was not the unqualified owner of the property, and there was a lien which had previously been established by this court and suit had been commenced to foreclose the lien. There was further testimony from which the jury might conclude, that when Stebbins made application for this insurance he fully informed the agents of the insurance company of the true condition of his title, and all of the facts above recited. The insurance company contends that these facts showed conditions violative of the express terms of the policy of insurance and that Stebbins was not entitled to recover.

While the authorities are not in entire agreement, it has generally been held that knowledge of the agent who issues the insurance, concerning the condition and title of the property insured, is the knowledge of the insurance company. *Mesterman v. Home Mutual Ins. Co.*, 5 Wash. 524, 32 Pac. 458, 34 Am. St. 877; *Hart v.*

*Niagara Fire Ins. Co.*, 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86; *Foster v. Pioneer Mutual Ins. Ass'n,* 37 Wash. 288, 79 Pac. 798; *Norris v. China Traders' Ins. Co.*, 52 Wash. 554, 100 Pac. 1025; *Staats v. Pioneer Ins. Ass'n,* 55 Wash. 51, 104 Pac. 185; 14 R. C. L. 1156 *et seq; People's Fire Ins. Ass'n v. Goyne,* 79 Ark. 315, 96 S. W. 365, 16 L. R. A. (N. S.) 1180, and particularly the extensive note to that case.

It has also generally been held that, where an insurance agent issues and delivers a policy of fire insurance, which contains forfeiture clauses contradictory to the facts known to him at the time of the issuance of the policy, the company so issuing the policy will be held to have waived such inconsistent provisions and is estopped to defend by virtue of them. 19 Cyc. 815, and cases there cited; note commencing on page 1222, 16 L. R. A. (N.S.); *Sidebotham v. Merchants Fire Ass'n,* 41 Wash. 436, 83 Pac. 1028; *Hatcher v. Sovereign Fire Assurance Co.,* 71 Wash. 79, 127 Pac. 588; *Ramat v. California Ins. Co.,* 95 Wash. 571, 164 Pac. 219; *Boskovich v. Union Assurance Soc.,* 98 Wash. 579, 168 Pac. 166; *Robbins v. Milwaukee Mech. Ins. Co.,* 102 Wash. 539, 173 Pac. 634.

The trial court submitted to the jury, with somewhat elaborate and entirely proper instructions, the questions whether Stebbins, at the time he made oral application for the insurance, fully informed the insurance agents of the condition of the title to the insured property, of Pugsley's interest therein and of the suit to enforce that interest. Since the jury found for Stebbins, we must assume that the agents had all this information. To hold with appellant on this question would be to hold that the policy was void when issued and that the insurance company was accepting premiums for a policy which it knew was void.

But the appellant contends that, in any event, the provision in the policy making it void in the event notice of sale under foreclosure, has not been waived, because such notice had not been given when the policy was issued, and the agents could not have had any knowledge of the violation of that provision of the policy. Its argument is that while it might be willing to insure property which was covered by a mortgage or lien, and might even be willing to insure such property after suit had been commenced to foreclose such lien, it does not logically follow that it would be willing to insure the property after notice of sale had been given. They argue that a mortgage upon property creates an additional hazard, and that suit to foreclose such mortgage increases that additional hazard, and that a notice of sale under the decree of foreclosure gives still additional hazard, and that while it might be willing to waive one or more of these additional hazards, it should not be construed that it has waived all of them because it has waived some of them. This question is not without difficulty, but we have concluded that the insurance company is not in position to make this defense; in the first place, this provision of the policy reads as follows:

. "Or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given for the sale of any property covered by this policy by virtue of any *mortgage or trust deed*,"

[the underscoring is ours] the policy shall be void. It may be somewhat difficult to give any specific name to the lien which was being foreclosed in the Pugsley suit, but, in any event, it is perfectly plain that it was not a mortgage nor a trust deed. If the Pugsley suit had been an action to foreclose a labor or mechanic's lien, we think it would hardly be contended that such an

action would be in violation of this provision of the
.policy. If it be said that this construction is a strict
one, our answer is that the insurance company is re-
sponsible for the provisions found in the policy. The
words there used are its own, and it has been almost
.universally held that insurance policies will be strictly
construed against the insurer and liberally construed
in favor of the insured.

But there is another reason why this defense cannot
be made. The notice of sale by the sheriff was but a
part of the foreclosure proceedings and if the insur-
ance company knew that suit had been commenced to
foreclose the lien, it also knew that, in the natural
course of events, the lien may be foreclosed and the
property sold. If the insurance company is estopped
to defend on the ground that suit to foreclose the lien
had been commenced, then it should also be estopped
to defend on the ground that notice of the sale of the
property had been given by virtue of the decree fore-
closing the lien. No cases directly in point on this
proposition have been cited to us, nor have we found
any, but the following, on principle, support our view:
*Greenlee v. North British & Merc. Ins. Co.,* 102 Iowa
427, 71 N. W. 534, 63 Am. St. 455; *Fitzgibbons v. Mer-
chants & Bankers Mut. Fire Ins. Co.,* 126 Iowa 62, 101
N. W. 454; *Butz v. Ohio Farmers' Mut Ins. Co.,* 76
Mich. 263, 42 N. W. 1119, 15 Am. St. 316. Again, Laws
of 1915, p. 703, provides that,

"No oral or written misrepresentations or warran-
ties made in the negotiation of a contract or policy of
insurance, . . . shall be deemed material or de-
feat or avoid the policy or prevent its attaching, unless
such misrepresentation or warranty is made with the
intent to deceive."

In the case of *Robbins v. Milwaukee Mech. Ins. Co.,* *supra,* we held that the statute controlled a situation very like that involved here.

The appellant claims error because the court refused to give a number of its requested instructions. It will not be necessary for us to discuss these in detail. Those requests were, in large measure, concerning the power of the insurance company's agents to waive provisions of a policy issued by them, and whether their knowledge concerning matters within their agency will be considered the knowledge of the insurance company. These questions have all been covered by what we have heretofore said.

The policy provided that in case of fire the insured should give immediate notice of the loss in writing to the company, and within sixty days after the fire, in writing, render a statement, signed and sworn to by the insured, stating certain facts concerning the fire. It appears that the insured did not strictly comply with these provisions of the policy. He orally notified the agents of the company and the company's adjuster proceeded at once to adjust the loss. There was testimony to the effect that the adjuster waived this provision of the policy. That an adjuster may waive formal written notice of the loss has been held by nearly all courts, including this one. The trial court properly instructed the jury on this question, and since its verdict was against the insurance company, we must assume that it found that the adjuster had waived formal compliance with the terms of the policy concerning notice of loss.

Certain other questions have been argued by the appellant, but we do not consider them to have merit. Our conclusion is that the case was properly and finally submitted to the jury, and that the judgment in favor

of Stebbins against the insurance company must be affirmed.

Having come to this conclusion, it now devolves upon us to determine who, of all the applicants, is entitled to receive the money. There are three of them: Estate of J. O. Pugsley, Gram & Barrett and John W. Smyser.

The original contract of sale, between Pugsley and Stebbins, provided that the latter should,

"Keep the buildings on said premises in good repair and insured in such sum as they will reasonably bear in a company satisfactory to the first parties (Pugsley and wife), loss, if any, payable to first parties, and deliver such policy to the first parties."

The policy sued on did not show that the loss, if any, was to be payable to Pugsley. Under the Pugsley foreclosure and sale heretofore mentioned, the property sold for less than the amount of his judgment, leaving a deficiency in the sum of something over $1,500. Before the sale was made, the dwelling on the property was destroyed, thus reducing very materially the value of the property. Subsequently to all of this, Mr. Pugsley died and the administrator of his estate was substituted. The administrator now claims to be entitled to sufficient of the insurance money to discharge the deficiency judgment, claiming that the insurance taken out by Stebbins was for his benefit under the terms of the sales contract between him and Stebbins.

The claim of Gram & Barrett is based upon the following facts: After the fire Stebbins employed them as attorneys to look after his interests in collecting the insurance, and on January 30, 1919, being some six months after the fire, Stebbins made a formal contract with them whereby they were to prosecute the suit for the insurance and were to receive one-half of any judgment which might be obtained, as compensation for their services, and to secure the payment of such sum

Stebbins assigned to them the policy of insurance and one-half of the money to be collected thereunder. These attorneys were acquainted with the Pugsley-Stebbins contract and its provision with reference to insurance for the benefit of Pugsley. These attorneys do not appear personally in this action but Stebbins is claiming the right to receive sufficient of the money in order that he may comply with his contract with his attorneys, and in this regard they are represented by him in this action. The amount of the judgment against the insurance company is $3,300, consequently the amount of the claim of the attorneys is one-half of that sum, to wit, $1,650.

The Smyser claim is based upon the following facts: Prior to June 20, 1919, Stebbins had become indebted to him in the sum of $2,000, and on that date he gave to Smyser his promissory note for that sum, and as security therefor assigned in writing to Smyser his interest in $2,000 of the amount called for by the policy of insurance, and authorized that sum to be paid by the insurance company to Smyser.

The trial court entered a judgment declaring that the estate of J. O. Pugsley, deceased, had a prior lien on the insurance money in the sum of $1,523, plus certain interest and costs; that the attorneys, Gram & Barrett, had a lien on one-half of the insurance money, but that such lien is subject to the prior lien in favor of the Pugsley estate and senior to the claim of Smyser, and that Smyser had a valid lien on such insurance money to the extent of $2,000 and interest, but that it was subsequent to the Pugsley and the Gram & Barrett liens. Stebbins, for the benefit of Gram & Barrett, and Smyser, have appealed.

We think it plain that if the Pugsley estate has any right whatever to this insurance money, such right is superior and senior to the rights of all other parties,

to the extent of the deficiency judgment. It has many times been held that where a mortgage provides that the mortgagor shall keep the mortgaged property insured for the benefit of the mortgagee, the latter is entitled to receive the insurance money, in the event of loss, to the extent of his interest, and this notwithstanding the insurance policy issued to the mortgagor may make no provision whatever that the loss shall be paid to the mortgagee.

"But it is settled by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed, and this equity exists, although the contract provides that in case of the mortgagor's failing to procure and assign such insurance, the mortgagee may procure it at the mortgagor's expense." 14 R. C. L. 1367.

In the case of *Robbins v. Milwaukee Mech. Ins. Co.*, *supra*, we said:

"It is also a familiar doctrine that a policy of insurance inures to the benefit of the mortgagee, whether the policy, by its terms, is so payable or not, if the mortgage, by its terms, requires the mortgagor to insure for the benefit of the mortgagee."

See, also, the following cases to the same effect: *Johnson v. Northern Minn. L. & I. Co.*, 168 Iowa 341, 150 N. W. 596; *Manson v. Phoenix Ins. Co.*, 64 Wis. 26, 24 N. W. 407, 54 Am. Rep. 573; *Hyde v. Hartford Fire Ins. Co.*, 70 Neb. 503, 97 N. W. 629, 13 Am. St. 796; *Wheeler v. Factors & Traders Ins. Co.*, 101 U. S. 439, 25 L. Ed. 1055; 19 Cyc. 885.

The principle of law must be the same whether the policy is provided for in a mortgage or a contract for the sale of property, because the purpose of the pro-

vision in each instrument is the same. In fact, this court practically so held in the case of *Robbins v. Milwaukee Mech. Ins. Co., supra.* It may be that Stebbins did not take out this policy of insurance with a view of complying with his contract, or with a view of further security to the Pugsleys, but that can make no difference because his contract required him to do the very thing which he did. It must be remembered that when this insurance policy was taken out the contract between Stebbins and Pugsley was still in existence, and under its terms Stebbins still owed a considerable sum of money to the Pugsleys.

The attorneys, Gram & Barrett, when they entered into their contract which gave them an interest in this insurance money, knew of the Pugsley contract and must be held to have known that Pugsley would have a right to claim the insurance money to the extent of his interest, consequently the interest of the attorneys in this money is subsequent to that of the Pugsley's estate. It is true, it was through their efforts that this insurance fund has come into existence, but that fact cannot legally deprive the Pugsley estate of its prior interest in the money. A somewhat extended argument is made on the theory that an attorney's lien on the fund must be senior to all other claims. This argument would raise an interesting question if, in fact, Gram & Barrett had filed and claimed an attorney's lien as provided by statute. This was not done. Their rights rest solely on their agreement with their client. But their interest in this insurance money is senior to that of the claimant Smyser, because it is senior in time. They received their interest on January 30, 1919, whereas Smyser did not receive his interest until June 20, 1919.

The judgment is affirmed in all respects.

PARKER, C. J., FULLERTON, and HOLCOMB, JJ., concur.