[No. 27068. Department Two. August 17, 1938.]

A. F. COOK *et al., Plaintiffs,* v. ALBERT COMMELLINI *et al., Respondents,* ALBERT'S APARTMENTS, INC., *Appellant.*[1]

[1] Reported in 82 P. (2d) 143.

126

*Joseph A. Albi* and *G. E. Lovell,* for appellant.

*Harrison M. Berkey,* for respondent receiver.

MILLARD, J.—In June and July, 1936, Glenn Cunningham was appointed receiver for the Ambassador Club, a corporation, for the Ambassador Club Building, a corporation, and for the property of Albert Commellini, in supplemental proceedings. In September, 1936, by order of the superior court for Spokane county, those receiverships were consolidated for the purpose of administration.

At the time of the appointment of the above named receiver, the land and buildings stood in the name of the Ambassador Club Building Corporation, subject to a mortgage to the Albert's Apartments, Incorporated, for $8,400. The mortgagor was obligated by the following mortgage provision to insure, for the benefit of the mortgagee, the property against loss by fire:

"To keep all buildings in good repair and unceasingly insured against loss or damage by fire in manner and form satisfactory to the mortgagee and in a company or companies to be named by the mortgagee in a sum not less than TEN THOUSAND DOLLARS ($10,000.00) dollars; to pay all premiums and charges on all such insurance when due; to deposit with the mortgagee all insurance policies whatsoever affecting the mortgaged premises, and to provide that all insurance whatsoever affecting the mortgaged premises shall be made payable

in case of loss to the mortgagee, with a mortgage sub-rogation clause in favor of and satisfactory to the mort-gagee. In case of payment of any policy or any part thereof, the amount so paid shall be applied either upon the indebtedness secured hereby or in rebuilding or restoring the premises, as the mortgagee may elect. All insurance affecting the mortgaged property, written during the life of this mortgage, may at its option be placed by ALBERT'S APARTMENTS, INC."

That mortgage was assigned to Murphey, Favre & Company to secure payment of an indebtedness of the mortgagee to the assignee. Upon his appointment, the receiver ascertained that the mortgaged property was not insured against loss by fire. Whereupon, after a conversation with a representative of the mortgagee's assignee, he secured insurance, payable to "Glenn E. Cunningham, Receiver," in the amount of ten thousand dollars on the building and five thousand dollars on the contents of the building. In the conversation prior to obtaining insurance, the receiver stated to a Mr. Barrett, a representative of Murphey, Favre & Company, as-signee of the mortgagee, that he did not have any funds to pay fire insurance premiums;

". . . that I considered that I was representing the creditors and that I would go ahead and write in-surance for the general creditors but that I would not carry insurance for that mortgage, to protect the first mortgage. He made no objections, or made no objec-tions and at no time did they demand on me, made a demand on me to carry insurance or suggest that I carry insurance."

The receiver did not assume the mortgage, nor did he make any payments thereon.

In an action brought by lien claimants for foreclosure of their liens against the Ambassador Club Building Corporation, Albert's Apartments, Incorporated, inter-vened and prayed that its mortgage be foreclosed. Shortly thereafter, the club building was destroyed by

fire. The receiver collected the entire amount of insurance. After the fire, the intervener, to which Murphey, Favre & Company reassigned the mortgage for the purpose of foreclosure, amended its complaint and claimed an equitable lien on the proceeds of the insurance to the amount of the deficiency judgment which it holds against the Ambassador Club Corporation. The intervener has appealed from the decree adjudging the receiver is the owner of and entitled to the proceeds of the fire insurance policies.

The receiver agrees that, if a mortgagor is bound by covenant, as in the case at bar, to insure mortgaged premises for the benefit of the mortgagee, the mortgagor's failure to make the insurance effected by the mortgagor payable to the mortgagee will not give to the mortgagor the right to retain the proceeds from the insurance policy, but the mortgagee may have an equitable lien impressed upon the proceeds for the payment of the mortgage indebtedness.

"Such right is superior and senior to the rights of all other parties, to the extent of the deficiency judgment. It has many times been held that where a mortgage provides that the mortgagor shall keep the mortgaged property insured for the benefit of the mortgagee, the latter is entitled to receive the insurance money, in the event of loss, to the extent of his interest, and this notwithstanding the insurance policy issued to the mortgagor may make no provision whatever that the loss shall be paid to the mortgagee.

" 'But it is settled by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed, and this equity exists, although the contract provides that in case of the mortgagor's failing to procure and assign such insurance,

the mortgagee may procure it at the mortgagor's expense.' 14 R. C. L. 1367.

"In the case of *Robbins v. Milwaukee Mech. Ins. Co., supra,* we said:

" 'It is also a familiar doctrine that a policy of insurance inures to the benefit of the mortgagee, whether the policy, by its terms, is so payable or not, if the mortgage, by its terms, requires the mortgagor to insure for the benefit of the mortgagee.'

"See, also, the following cases to the same effect: *Johnson v. Northern Minn. L. & I. Co.,* 168 Iowa 341, 150 N. W. 596; *Manson v. Phoenix Ins. Co.,* 64 Wis. 26, 24 N. W. 407, 54 Am. Rep. 573; *Hyde v. Hartford Fire Ins. Co.,* 70 Neb. 503, 97 N. W. 629, 13 Am. St. 796; *Wheeler v. Factors & Traders Ins. Co.,* 101 U. S. 439, 25 L. Ed. 1055; 19 Cyc. 885.

"The principle of law must be the same whether the policy is provided for in a mortgage or a contract for the sale of property, because the purpose of the provision in each instrument is the same." *Stebbins v. Westchester Fire Ins. Co.,* 115 Wash. 623, 197 Pac. 913.

█ The receiver insists that, before there can be presented any equitable grounds for impressing a lien upon the proceeds of the insurance in favor of the appellant, it must be shown that the receiver assumed the obligations of the mortgage, either actually or by operation of law; or that the surrounding facts are such that the receiver is estopped from denying that an obligation exists on his part to protect the appellant by insurance.

It is a sufficient answer to the contention of the receiver that he has the right upon his appointment to assume or reject executory contracts, to invoke the rule that, when a mortgage provides that the mortgagor shall insure for the benefit of the mortgagee, and the receiver of the mortgagor obtains insurance, the receiver's rights are the rights of the mortgagor. When the receiver took out the insurance policies upon the

property, he fulfilled the obligation which had rested upon the mortgagor, in whose shoes the receiver stands, to insure; and the insurance became, by virtue of the covenant in the mortgage, a security for payment of the mortgage debt. The receiver did not reject, he assumed, the contract to insure.

An apt authority is *Smith & Furbush Mach. Co. v. Huycke,* 72 Okla. 30, 177 Pac. 919. In that case, the Smith & Furbush Machine Company sold certain machinery to the Southwestern Bedding Company and, at the time of the sale, entered into a contract with the purchaser by which title to the property was retained by the former until the purchase price was fully paid. By the terms of that contract, the purchaser agreed to keep the machinery insured in the name of the vendor. At the suit of a creditor bank, a receiver was appointed for the assets of the vendee. While the receiver was operating the plant, same, including the machinery mentioned, was destroyed by fire. The vendor filed a petition of intervention in the proceedings in which a receiver had been appointed. The property was covered by insurance, which was paid to the receiver. The vendor's claim of an equitable lien upon the proceeds of the insurance for the amount due to it was denied by the court. On appeal, that judgment was reversed. The court said:

"It is a well-established rule that when, by the terms of a mortgage, it is the duty of the mortgagor to keep the property insured for the benefit of the mortgagee, and the mortgagor takes out a policy in his own name and does not assign it or make it payable to the mortgagee, and a loss occurs, such agreement creates an equitable lien in favor of the mortgagee to the extent of the mortgage indebtedness upon the money due under the policy of insurance; and this is true, even though the mortgagee under the power contained in the mortgage, in default of insurance by the mortgagor, may insure the property at the expense of the mort-

gagor. *Wheeler v. Factors' & Traders' Ins. Co.*, 101 U. S. 439, 25 L. Ed. 1055; *Chipman et al. v. Carroll et al.*, 53 Kan. 163, 35 Pac. 1109; 25 L. R. A. 305; *Aetna Ins. Co. v. Thompson,* 68 N. H. 20, 40 Atl. 396, 73 Am. St. Rep. 552; *Hyde v. Hartford Fire Ins. Co.*, 70 Neb. 503, 97 N. W. 629, 113 Am. St. Rep. 796; 4 Joyce, Ins. § 3523; 4 Cooley's Briefs Ins., 3703; 14 R. C. L. § 536, title 'Insurance.' This rule is applicable to an agreement by a vendee to insure for the benefit of his vendor. *Grange Mill Co. v. Western Assur. Co.*, 118 Ill. 396, 9 N. E. 274; *Cromwell v. Brooklyn Fire Ins. Co.*, 44 N. Y. 42, 4 Am. Rep. 641.

"Applying this rule to the case at bar, the Smith & Furbush Machine Company was entitled to an equitable lien upon the proceeds of the policy of insurance for the balance of the purchase price remaining unpaid at the time the property was destroyed by fire. . . .

"On petition for rehearing it is again urged that it does not appear that the property sold by the Smith & Furbush Machine Company was in possession of the receiver at the time of the fire which destroyed the property of the Southwestern Bedding Company. Upon a re-examination of the record we adhere to the original conclusion that the property was taken possession of by the receiver, and was in his possession at the time of the fire which destroyed the·plant of the Southwestern Bedding Company.

"Our attention is called to a statement in the opinion that the property was insured at the time the receiver was appointed and that the receiver kept the insurance in force. This statement is not strictly accurate. When the receiver was appointed the insurance then in force was canceled, and the receiver procured a policy in his own name as receiver upon all the property of the bedding company in his possession, including that purchased from the Smith & Furbush Machine Company. This does not alter the conclusion reached. The receiver was the representative of the court, and held the property for the benefit of the debtor and all creditors in proportion to their respective interests. At the time the Smith & Furbush Machine Company sold the property to the Southwestern Bedding Company, a written contract was executed, in which title thereto was re-

served until the property was fully paid for, and this contract was duly filed with the register of deeds and constituted a lien upon the property. An additional covenant in the contract required the purchaser, the Southwestern Bedding Company, to keep the property insured for the benefit of the seller, the Smith & Furbush Machine Company. It would be inconceivable that a court of equity should take property of a creditor into its custody, not as a representative of the debtor alone, but of all the creditors as well, and that by the act of taking charge thereof in an effort to preserve the rights of all parties it should expose the property to destruction without making provision for compensating the parties therein according to their respective interests.

"When the receiver took possession of the property, he held it by the same right and title, and by no other, as that of the Southwestern Bedding Company, subject to all liens, properties, and equities, whether created by operation of law or by the act or contract of the corporation, which existed against the property at the time of his appointment. *Ardmore National Bank v. Briggs Machinery & Supply Co.*, 20 Okla. 427, 94 Pac. 533, 23 L. R. A. (N. S.) 1074, 129 Am. St. Rep. 747, 16 Ann. Cas. 133; *Lawson, Receiver, v. Warren*, 34 Okla. 94, 124 Pac. 46, 42 L. R. A. (N. S.) 183, Ann. Cas. 1914C, 139. So that when he insured the property in his own name as receiver, the insurance was effected for the benefit of the owner and creditors according to their respective interests therein and liens thereto; and, a loss having occurred, the Smith & Furbush Machine Company was entitled to a lien upon the proceeds of the insurance to the extent of their lien upon the property destroyed, and this lien was superior to the claim asserted by the American National Bank, *Cronenwett v. Boston & A. Transp. Co.* (C. C.) 95 Fed. 52." *Smith & Furbush Mach. Co. v. Huycke*, 72 Okla. 30, 177 Pac. 919.

In *American Ice Co. v. Eastern Trust & Banking Co.*, 188 U. S. 626, 47 Law Ed. 623, 23 S. Ct. 432, the United States supreme court held that, while a covenant in a mortgage to keep the property insured does not run

with the land so that an actual grantee taking subject to the mortgage comes under a primary obligation to insure, the case is different under language like that contained in the mortgage in the case at bar and where the mortgagor, after failing to insure in accordance with the covenant, transfers the property to a voluntary assignee. In such a case, the insurance taken out by the assignee, who stands in the shoes of the assignor, must be assumed to be taken out in fulfillment of the mortgagor's covenant, and in the event of loss, the amount collected under the policies inures to the benefit of the mortgagee and cannot be retained by the assignee as representing his interest, or that of general unsecured creditors, in the equity of the property. The court said:

"The assignee claims to be entitled to pay these moneys for the benefit of all the creditors, unsecured as well as secured, while the appellee, the trustee in the mortgage, demands that the moneys should be paid to it for the purpose of reducing the deficit which may arise from the sale of the mortgaged premises, and the courts below have so decreed. The claim of the appellee is founded upon the language used in the mortgage, by which the ice company was to keep the 'premises and property at all times insured . . . in such amounts as shall reasonably protect all the insurable property . . . In case of loss the insurance money may be applied by the trustee toward the renewal of or additions to the property destroyed or injured, or, at the option of the trustee, the money may either be retained and invested in such securities as it approves, as a sinking fund for the redemption of the bonds when due, or to be applied to the payment of the principal' of such bonds, etc. This language, it is urged, takes the case out of the ordinary rule that a simple covenant to insure contained in a mortgage does not run with the land. The assignee appellant founds his claim upon the assertion that, as assignee, he was the owner of the equity of redemption, having an insurable interest in the premises as such, and that, in fact, he intended such

insurance for the benefit of all creditors, and not as a fund for the security of the bondholders alone.

"In *Farmers' Loan & Trust Co. v. Penn Plate Glass Co.*, 186 U. S. 434, we had occasion to examine the nature and effect of a covenant to insure contained in a mortgage, and we concluded that such a covenant does not run with the land, so that one taking a conveyance subject to the mortgage comes under a primary obligation to insure. In that case the mortgage was foreclosed and the property bid in at the judicial sale, and the grantee of the Master took out insurance in his own name for the purpose of insuring his own interest in the premises which he had purchased, and he repudiated in terms any obligation to insure for the benefit of the mortgagee, and accordingly the policies were issued, and they stated they did not cover the mortgagee's interest in the premises.

"Here there is in substance no difference between the mortgagor and its assignee for the benefit of creditors, so far as this question is concerned. The mortgagor had indeed failed to insure, as it had covenanted to do, but when it transferred the legal title of the property to its voluntary assignee, he stood in the shoes of his assignor, and when he took out insurance policies upon the property he in effect fulfilled the obligation which had rested upon the mortgagor to insure, and the insurance thus becomes by virtue of the covenant a security for the payment of the bonds secured by the mortgage. This does not make a case of a covenant to insure running with the land as against a subsequent purchaser of the property for value, but, as we have said, it is simply the case of a taking out of insurance by a voluntary assignee having no beneficial interest in the property, and when such assignee insures the premises under the circumstances herein stated, with such a covenant in a mortgage, the insurance moneys enure to the benefit of the bondholders secured by the mortgage.

"It was conceded in the court below that, as a general proposition, a covenant to insure was a mere personal covenant, and did not attach to and run with the land, but it was held that the peculiar language of this mortgage took it out of that rule.

"Mr. Chief Justice Alvey said in the Court of Appeals in this case, 14 App. D. C. 331:

" 'It is very clear, that, by the terms of the covenant, it had relation to the land, and its principal object was to keep and maintain the buildings on the property in condition for carrying on the ice business. This was the great object of the insurance required, as means of security to the bondholders. Without this, the property, by fire, might be rendered of little value, and the bondholders be left without security. By means of the insurance it was intended that the property should be maintained as security; and hence it was provided, primarily, that the insurance money might be expended in renewal of or adding to the buildings. In such cases it has been repeatedly held, that the covenant does run with the land, at least in an equitable sense; and where an insurance has been obtained, though by an assignee, and a fire has occurred, and the insurance money has been received, a court of equity has held that the insurance money should be applied for the benefit of those for whose protection the original covenant was made.'

"The cases of *Vernon v. Smith*, 5 Barn. & Ald. 1, 7; *Thomas v. Vonkapff*, 6 Gill & John. 372; *Miller v. Aldrich*, 31 Michigan 408, 411; *Ellis v. Kreutzinger*, 27 Missouri, 311; *Nichols v. Baxter*, 5 R. I. 491; *Masury v. Southworth*, 9 Ohio St. 340, 348, and *In re Sands Ale Brewing Company*, 3 Bliss. Rep. 175, were cited by the Chief Justice in support of his contention.

"In the case of *Wheeler v. Insurance Company*, 101 U. S. 329, it was held that where a mortgagor is bound by his covenant to insure the mortgaged premises for the better security for the mortgagees, the latter have to the extent of their interest in the property destroyed, an equitable lien upon the money due from the policy taken out by him, and that this equity exists, although the contract provides that, in case of the mortgagor's failure to procure and assign such insurance, the mortgagees may procure it at the mortgagor's expense.

"So in this case, we practically have a fulfillment of the mortgagor's covenant to insure, because its voluntary assignee, standing in its shoes, did himself insure the premises, and such insurance enures to the benefit of the mortgagee, because the assignee is a voluntary

one, and is but carrying out an obligation imposed originally upon his assignor. The peculiar language of the mortgage upon the subject of insurance takes it out of the general rule governing such covenants.

"We think the case at bar is not covered by the case of *Trust Company v. Penn Glass Company,* 186 U. S. 434, *supra,* and that the court below made the proper decree in relation to the insurance moneys.". *American Ice Co. v. Eastern Trust & Banking Co.,* 188 U. S. 626, 47 Law Ed. 623, 23 S. Ct. 432.

The foregoing authority is not distinguishable in principle from the case at bar. Whether the receivership is voluntary or involuntary, is not material. When the assignee in that case, as the receiver did in the case at bar, took out insurance policies upon the property and thereby fulfilled the obligation resting upon the mortgagor to insure, it follows that the insurance, in the case at bar as in the case cited, became, by virtue of the covenant, a security for payment of the debt secured by the mortgage.

Clearly, the rule is that, when a mortgage provides that the mortgagor shall insure for the benefit of the mortgagee and the receiver of the mortgagor takes out insurance upon the property, the receiver fulfills the obligation which rested upon the mortgagor to insure, and the proceeds of such insurance inure to the benefit of the mortgagee.

The conversation of the receiver with a representative of the company holding the mortgage as collateral did not change the legal status of the parties. If the original mortgagor had notified the mortgagee that it would not obtain insurance payable to the mortgagee, but that it would take out insurance payable to another creditor, that would not have destroyed the mortgagee's lien upon the insurance.

Nor does the fact that the agent, to whom the receiver stated that he would obtain insurance payable

to himself and that that insurance would be applied to payment of the claims of the general creditors, remained silent, create an estoppel in favor of the receiver.

All of the parties were charged with knowledge of the law, and the facts were equally known to all of the parties. The mortgagee was entitled to the benefits to be derived from the insurance effected upon the property by the receiver in fulfillment of the obligation of the mortgagor to insure, and the mortgagee was under no duty to agree or disagree with the expressed opinion of the receiver that he had the legal right to effect insurance on the property and pay same to the general creditors and exclude the first mortgage from the protection afforded by that insurance.

"The next question is whether the appellant is estopped from claiming that the 1925 tax is void because he signed the listing for that year.

"The rule sustained by the decided weight of authority is that, where the facts are equally known to both parties, the expression of an opinion upon a question of law does not work an estoppel." *Turner v. Spokane County,* 150 Wash. 524, 273 Pac. 959.

The judgment is reversed.

BEALS, BLAKE, ROBINSON, and SIMPSON, JJ., concur.