[No. 14585.    Department One.    June 15, 1918.]

## S. V. ROBBINS et al., Respondents, v. MILWAUKEE MECHANICS INSURANCE COMPANY, Appellant.[1]

SALES—CONDITIONAL SALES—ASSIGNMENT. An absolute bill of sale by the vendee in a conditional sales contract conveys only his interest, and amounts to no more than an assignment of the conditional sales contract.

INSURANCE—AVOIDANCE OF POLICY—TITLE—MISREPRESENTATIONS—"INTENT TO DECEIVE." Under Rem. Code, § 6059-34, providing that misrepresentations or warranties shall not avoid a policy of insurance unless made with intent to deceive, a fire policy on pool tables issued to the vendee in a conditional sales contract is not defeated by the insured's want of title, where he informed the insurance agent that he had not paid for the tables, the conditional sales contract was on record, and the agent was put on inquiry as to the state of the legal title.

SAME—INSURABLE INTEREST—TITLE—CONDITIONAL SALE—RELIEF IN EQUITY. Where a conditional sales contract required the vendee to insure the property for the benefit of the vendor, the policy inures to the benefit of the vendor, and the insurance company, with notice or put on inquiry, cannot in equity complain of reformation of the policy or decree protecting the vendor to the extent of the unpaid purchase price.

SAME—ACTION FOR LOSS—PROOFS OF LOSS—WAIVER. The question of waiver of proofs of loss is a question for the jury, where it appears that the insured furnished the adjuster all itemized statements and information desired by the adjuster and was misled into believing that nothing further was necessary.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered June 23, 1917, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

[1]Reported in 173 Pac. 634.

*Kerr & McCord,* for appellant.

*James B. Murphy,* for respondents.

TOLMAN, J.—On November 11, 1915, Viola Robbins, one of the respondents, was the owner of two pool tables and equipment pertaining thereto, and on that day, through her husband, S. V. Robbins, the other respondent, she sold the same to L. N. Kempf, and took a conditional sale agreement in the usual form, reserving title in herself and providing that, upon the payment of the purchase price of $300 in installments as therein set forth, the title should vest in the vendee. In the contract was the following:

"And said vendee further agrees to keep said property insured in a sufficient amount in favor of said vendor to cover her interest at all times before the vesting of said title in said vendee by the making of said payments as aforesaid."

This conditional sale agreement was duly filed for record on the day of its execution. Shortly afterwards, and when only two or three small payments had been made upon the conditional sale contract, L. N. Kempf made a bill of sale of all of the property in his place of business, including the two pool tables and equipment now under consideration, to his father, Casper Kempf. L. N. Kempf, as agent of Casper Kempf, remained in possession at all times until the property was destroyed by fire as hereinafter mentioned. Shortly after the conveyance to Casper Kempf, L. N. Kempf, as his agent, procured a policy of insurance against loss by fire upon all of the property included in the bill of sale to Casper Kempf, in which the pool tables were specifically mentioned, and it was provided that there should be no recovery greater than $150 for each pool table under the policy. The premium was paid by checks signed "Casper Kempf by L. N. Kempf,

Agent,'' prior to the fire, and on January 26, 1916, the premises and all of the insured property, including the pool tables, were destroyed by fire.

L. N. Kempf, as agent for Casper Kempf, immediately began to take steps to claim loss under the policy of insurance, discussed the matter with the local agent of the company, whose place of business was across the street from the premises where the fire occurred, and the company sent its adjuster, who conferred with L. N. Kempf. Itemized statements were made up and furnished to the adjuster, which included the pool tables in question. The adjuster appears to have made inquiries of L. N. Kempf, and perhaps others, as to the value, and to have noted on these statements figures tending to indicate that he fixed the value of the tables at $300. And there is considerable testimony in the case to the effect that the adjuster was furnished all of the evidence with reference to the property destroyed and the value thereof which he required; that he was repeatedly asked if he required any further proof and made no demands therefor, although it is fair to state that this testimony is denied by the adjuster. In any event, the insurance money was not paid, and the respondent Viola Robbins, evidently fearing that the money might be paid by the insurance company to the Kempfs, or one of them, brought this action, in which both L. N. Kempf and Casper Kempf were made parties defendant, as well as the insurance company, seeking to enjoin the insurance company from paying the money to the Kempfs, or either of them, and praying that the insurance money be paid to her as her interest might appear.

Issues were raised by denials and affirmative defenses, and upon the trial the court below determined the issues in favor of the respondent, entering a judgment in her favor against L. N. Kempf and the insur-

ance company for the sum of $298.35, and enjoining the insurance company from paying any portion of the amount to L. N. Kempf or Casper Kempf. From this judgment, an appeal is prosecuted by the insurance company, which raises two principal contentions in this court: First, that the policy of insurance, having been written in the name of Casper Kempf as the insured, and he having no title to the pool tables, the policy was void, or at least that the respondent cannot recover thereon; and second, it is claimed that there was a failure to furnish proof of loss within sixty days in accordance with the terms of the policy, which policy was in the standard form, and that therefore no liability exists.

No doubt the legal title to the property in question was at all times in the respondent, and so remained until it was destroyed by fire. The conditional bill of sale placed L. N. Kempf in the lawful possession with the right to acquire title, and charged with all duties which the conditional bill of sale placed upon him. The bill of sale from L. N. Kempf to Casper Kempf, while purporting to be an absolute conveyance, could only operate to convey whatever interest L. N. Kempf had in the property, and hence, in law, amounted to no more than an assignment of his interest or rights under the conditional sale agreement, and at most was equivalent to an assignment of the contract, and Casper Kempf took the property subject to all of the terms of the conditional sale agreement, including the covenant to insure.

Casper Kempf appears never to have been in possession of the property, except through L. N. Kempf, the vendee in the conditional sale contract, whose possession of the property remained undisturbed from the time of making the contract until the destruction of the property by fire. He was in possession first as

vendee under the contract, and thereafter, if the bill of sale to his father is in fact anything more than colorable, as agent for Casper Kempf. There being no notice to the respondent of the purported sale to Casper Kempf, there was no change of possession as to her, and nothing to give her notice of such change.

The appellants' contention that there was a breach of the warranty of title under the policy appears to be disposed of by the statute, Laws of 1915, page 703, which provides:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation or warranty is made with the intent to deceive." Rem. Code, § 6059-34.

From all the evidence the trial court found that L. N. Kempf, in procuring the insurance, disclosed that he had not paid for the pool tables, and that he concealed none of the facts. It is apparent from the testimony that, had the agent followed up the inquiry, as he might have done, he could have ascertained the true facts as to the title to the property. There appears to be ample evidence to support the findings of the trial court in this respect, and we cannot find, from a careful examination of the record and a reading of the statement of facts, that the evidence preponderates against such findings.

It is argued, however, that there was no contractual relation between the respondent and the insurance company, and that the respondent has no interest in the policy and cannot recover thereunder. That the conditional bill of sale was of record is undisputed, and there is evidence tending to show that Mr. Goff, the agent who wrote the policy, had, or might have ob-

tained, knowledge of the true condition. However that may be, the insurance company appears to have received its premium, the property was destroyed, and it ought not, in good conscience, to avoid paying the loss on a mere technicality. The legal title to the property was in the respondent. L. N. Kempf, as vendee, had contracted to keep it insured to at least the extent of the unpaid purchase price, and his interest had passed to Casper Kempf with full knowledge of such condition. The property being destroyed, the insurance money stands in lieu thereof, and it would seem equitable, under these conditions, for the court, if necessary, to order a reformation of the insurance policy so that it should protect the interest of the true owner of the property.

This court has recognized this doctrine in *Gaskill v. Northern Assurance Co.*, 73 Wash. 668, 132 Pac. 643. True, in that case, it is said that the agent had actual knowledge of the ownership of the property. But it is not perceived that there should be any difference in applying the rule where the agent had notice and means of knowledge.

It is also a familiar doctrine that a policy of insurance inures to the benefit of the mortgagee, whether the policy, by its terms, is so payable or not, if the mortgage, by its terms, requires the mortgagor to insure for the benefit of the mortgagee. *Johnson v. Northern Minnesota Land & Investment Co.*, 168 Iowa 340, 150 N. W. 596; *Swearingen v. Hartford Fire Ins. Co.*, 56 S. C. 355, 34 S. E. 449; *Cromwell v. Brooklyn Fire Ins. Co.*, 44 N. Y. 42, 4 Am. Rep. 641; *Ames v. Richardson*, 29 Minn. 330, 13 N. W. 137; *Nordyke & M. Co. v. Gery,* 112 Ind. 535, 13 N. E. 683, 2 Am. St. 219. And it is difficult to see any reason why the insurance company should complain because the court below in effect found that the insurance money, which

stood in the place of the property destroyed, in equity belonged to the owner of the property to the extent of the unpaid purchase price which was owing her.

Appellant's contention that the terms of the policy were not complied with because no form of proof of loss was made within sixty days, and that such proof of loss was not waived, so far as it is a question of law, seems to have been decided against it by this court in the case of *Ramat v. California Ins. Co.,* 95 Wash. 571, 164 Pac. 219, where, upon a somewhat similar statement of facts, it was held that the question of the waiver of such proofs was a fact to be submitted to the jury. And also in the more recent case of *Boskovich v. Union Assurance Society,* 98 Wash. 579, 168 Pac. 166, where the court, after careful consideration and discussion, adopted and followed the rule previously announced in the case last cited. Since the question has been fully considered in both of these recent cases, it seems unnecessary to again enter into a discussion of it.

Upon the question of fact as to the waiver, the trial court found in favor of the respondent. It had the benefit of seeing the witnesses and hearing them testify in person. We cannot find that the evidence preponderates against the trial court's decision, and we are therefore satisfied to affirm it.

The judgment will be affirmed.

MAIN, C. J., MITCHELL, FULLERTON, and PARKER, JJ., concur.