[No. 57798-1-I. Division One. April 9, 2007.]

CHARLES W. GEER ET AL., *Appellants*, v. ALAN TONNON ET AL., *Respondents*.

---

[23] *Foran*, 67 Wn. App. at 248.

*Roger K. Anderson*, for appellants.

*Tyna Ek* (of *Soha & Lang, PS*), for respondents.

¶1 DWYER, J. — To prevail in a legal professional negligence case, the plaintiff client must demonstrate that the outcome of the underlying litigation for which the representation was provided would have been more favorable to the client than the result actually obtained but for the defendant attorney's negligence. Charles Geer appeals from the trial court's ruling granting attorney Alan Tonnon's motion for summary judgment in Geer's legal professional negligence action, which was based upon Tonnon's failure to file suit against an insurer within a one-year contractual limi-

tation period. The trial court ruled that Geer's claim failed under both the equitable lien and retroactive endorsement theories advanced by Geer. Specifically, the trial court ruled that Geer failed to establish causation because Washington law does not permit a person who is not a named insured to enforce an equitable lien directly against an insurer. The trial court also ruled that Geer's legal professional negligence claim based upon the retroactive endorsement failed for lack of expert testimony establishing either a breach of duty or causation. Finding no error, we affirm.

## FACTS

¶2 In January 2000, Paul and Alyson Graff executed a deed of trust as mortgagors of a house and real property in Carnation, Washington. The deed of trust contained a covenant requiring the Graffs to insure the house on behalf of the mortgagee, Charles Geer. In July 2001, the Graffs obtained a homeowners insurance policy effective through July 2002 from Underwriters at Lloyd's of London (Lloyd's). However, Geer was not named as an insured under the policy. The policy contained a one-year suit limitation period, requiring any action based upon the policy to be commenced within one year of the loss suffered. In September 2001, the house was destroyed by fire.

¶3 Alan Tonnon, Geer's attorney, did not file suit against Lloyd's to collect the insurance proceeds within one year of the fire, and Geer never directed Tonnon to do so. Tonnon did contact Lloyd's in an attempt to claim the insurance proceeds on Geer's behalf. In response to Tonnon's efforts, the insurance underwriter issued Geer a retroactive endorsement naming Geer as a "contract of sale holder" under the policy. However, Tonnon was never provided with notice of this endorsement. In November 2002, Lloyd's denied both the Graffs' and Geer's separate claims to the insurance proceeds on several grounds.[1] Because more than one year

---

[1] A November 2002 letter from Lloyd's provided several reasons why the Graffs' and Geer's claims to the insurance proceeds were denied. The letter asserted that

had elapsed since the fire, the one-year suit limitation period in the Lloyd's policy foreclosed Geer from seeking the insurance proceeds from Lloyd's in court.

¶4 Geer commenced this legal professional negligence action against Tonnon in August 2004, asserting damages in the amount of the insurance proceeds Geer would have recovered at trial had Tonnon filed suit against Lloyd's within the one-year limitation period. The action was premised upon two alternative theories. First, Geer claimed that he possessed an equitable lien on the Lloyd's policy proceeds by virtue of the covenant included in the Graffs' deed of trust, and that had Tonnon timely filed suit against Lloyd's to enforce Geer's equitable lien, Geer would have recovered the policy proceeds at trial. Alternatively, Geer claimed that had Tonnon timely filed suit against Lloyd's, Geer would have recovered the proceeds at trial by virtue of the retroactive endorsement naming Geer as a "contract of sale holder."

¶5 Tonnon and Geer both moved for summary judgment. The trial court granted Tonnon's motion while denying Geer's. Specifically, the trial court ruled that Geer's legal professional negligence claim based upon the equitable lien theory failed because, even if Tonnon had timely filed suit against Lloyd's seeking to enforce Geer's equitable lien on the policy proceeds, Geer would not have obtained a favorable result at trial. In so holding, the trial court ruled that Washington law does not provide a person who is not a named insured with a cause of action to enforce an equitable lien on insurance policy proceeds directly against an insurer. The trial court also ruled that Geer's legal professional negligence claim based upon the retroactive endorsement failed for lack of expert testimony establishing either a breach of duty or causation. Geer appeals.

---

(1) the signature of Paul Graff on the promissory note was a forgery, (2) arson may have caused the fire, (3) Geer's sale of the house following the fire voided the policy because Lloyd's was entitled to recover the house's salvage value, and (4) the failure of Geer and the Graffs to notify Lloyd's of Geer's status as mortgagee of the subject property voided the policy because it increased Lloyd's liability without prior approval.

## DISCUSSION

### I. *Standard of Review*

■ ■ ¶6 We engage in de novo review of a ruling granting summary judgment. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). In reviewing a grant of summary judgment, we conduct the same inquiry as the trial court. *Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 833, 906 P.2d 336 (1995). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). A material fact is one that affects the outcome of the litigation. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 861, 93 P.3d 108 (2004).

■ ■ ¶7 The moving party bears the initial burden of establishing its right to judgment as a matter of law. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party satisfies its initial burden, the burden then shifts to the nonmoving party to show that a triable issue exists. *Doherty v. Mun. of Metro. Seattle*, 83 Wn. App. 464, 468, 921 P.2d 1098 (1996). All reasonable inferences from the evidence must be construed in favor of the nonmoving party. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). If the nonmoving party " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial'," then summary judgment is properly granted in favor of the moving party. *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

II. *Geer Must Prove that Had Tonnon Timely Filed Suit against Lloyd's, Geer Would Have Obtained a Favorable Judgment*

¶8  To establish a legal professional negligence claim against Tonnon, Geer must prove the following elements:

> (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). The primary issue presented in this case is whether Geer satisfied the causation element of his claim, based upon the equitable lien theory, by showing that had Tonnon filed suit against Lloyd's within the one-year limitation period, Geer would have obtained a favorable judgment at trial.[2]

¶9  When determining questions of causation in a legal professional negligence action, the concern is cause in fact, i.e., the "but for" consequences of an attorney's negligent act. *Daugert v. Pappas*, 104 Wn.2d 254, 257-59, 704 P.2d 600 (1985). For example, in a malpractice action involving an attorney's failure to file an appeal in a timely manner, the cause in fact inquiry is "whether the client would have been successful" but for the attorney's failure to timely file the appeal. *Daugert*, 104 Wn.2d at 258. In such cases, "the client must show that an appellate court would have (1) granted review, and (2) rendered a judgment more favorable to the client." *Daugert*, 104 Wn.2d at 258. Because a trial judge is in a better position than a jury to determine whether appellate review would have been granted and the client would have received a more favorable judgment, the trial judge must make this determination as an issue of law. *Daugert*, 104 Wn.2d at 259.[3] Similarly, whether Geer would

---

[2] Tonnon also asserts that Geer did not establish the existence of an attorney-client relationship between them with respect to the fire loss. Given our resolution of the other issues presented, we need not address this issue.

[3] "*Daugert*'s reasoning is equally applicable to other attorney actions or omissions." *Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584, 592, 999 P.2d 42 (2000).

have obtained a favorable judgment at trial had Tonnon filed suit against Lloyd's within the one-year limitation period presents an issue of law for the trial court to resolve.

III. *Had Tonnon Timely Filed Suit against Lloyd's Seeking To Enforce the Equitable Lien, the Suit Would Have Been Dismissed*

¶10 Geer first contends that he possessed an equitable lien on the insurance proceeds of the Lloyd's policy by virtue of the covenant in the deed of trust requiring the Graffs, the mortgagors, to insure the subject property for the benefit of Geer, the mortgagee. Geer also argues that had Tonnon filed suit against Lloyd's within the one-year limitation period to enforce the equitable lien, Geer would have obtained a favorable judgment at trial.

¶11 The covenant in the deed of trust executed by the Graffs raises a question of fact as to whether Geer possessed an equitable lien on the proceeds of the Lloyd's insurance policy. However, even if Geer had an equitable lien on the policy proceeds, the existence of the equitable lien is not sufficient to withstand Tonnon's motion for summary judgment. To demonstrate that Tonnon's failure to timely file suit against Lloyd's based upon an equitable lien theory was the cause in fact of Geer's claimed damages, Geer must also prove that he had a cause of action to sue Lloyd's directly to enforce the equitable lien.

¶12 Geer asserts that Washington law provides a person who is not a named insured with a cause of action to sue an insurer directly to enforce an equitable lien on insurance policy proceeds. Geer further argues, based on decisions from other jurisdictions, that this cause of action constitutes a "bedrock principle of equity," the existence of which this court should expressly acknowledge. We decline the invitation. Contrary to Geer's contentions, no statute, reported decision, or "bedrock principle of equity" in Washington provides a person who is not a named insured with a cause of action to enforce an equitable lien directly against an insurer.

¶13 Geer relies upon sparse authority to support his contention that Washington law provided him with a cause of action to enforce an equitable lien directly against Lloyd's. Initially, Geer cites *Nelson v. Nelson Neal Lumber Co.*, 171 Wash. 55, 59, 17 P.2d 626 (1932), which discussed the doctrine of equitable liens in an action by stockholders against officers of a company alleging the conversion of insurance proceeds. As explained therein,

> "[i]t is well established that if a mortgage contains a covenant or condition that the mortgagor shall keep the premises insured for the benefit of the mortgagee, and the mortgagor takes out a policy in his own name and does not assign it or make it payable to the mortgagee, and a loss occurs, such a covenant creates an equitable lien in favor of the mortgagee to the extent of his mortgage interest upon the money due under the policy."

*Nelson*, 171 Wash. at 60 (quoting *Hyde v. Hartford Fire Ins. Co.*, 70 Neb. 503, 97 N.W. 629, 630 (1903)).[4] However, although *Nelson* supports Geer's assertion that he possessed an equitable lien on the Lloyd's policy proceeds, *Nelson* does not support Geer's argument that he had a cause of action to enforce an equitable lien directly against Lloyd's because, as the Supreme Court noted, *Nelson* was "not an action to impress the insurance proceeds with an equitable lien and enforce it." *Nelson*, 171 Wash. at 63.[5]

¶14 Geer also relies upon *Cook v. Commellini*, 196 Wash. 125, 128, 82 P.2d 143 (1938), which, unlike *Nelson*, was an action to impress insurance policy proceeds with an equitable lien and then enforce the lien. However, *Cook* fails to support Geer's present position because the Supreme Court

---

[4] A renowned treatise also provides that "[a]s a general rule, if the mortgagor covenants to keep the mortgaged property insured for the better security of the mortgagee, the latter will have an equitable lien upon the proceeds of insurance carried by the mortgagor, in case of a loss, to the extent of his or her interest in the property destroyed." 4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 65:83, at 65-114 (3d ed. 2005).

[5] Although the Supreme Court declared that the Nelson Neal Lumber Co. most likely possessed an equitable lien on the insurance policy proceeds, the court held that "an equitable title or right is not enough to support an action for conversion." *Nelson*, 171 Wash. at 64.

did not therein provide the mortgagee with a cause of action to enforce the equitable lien directly against an insurer. Rather, *Cook* held that the mortgagee had a cause of action to enforce an equitable lien against the mortgagor, a proposition disputed by neither party to this lawsuit.[6] That Geer might have had a cause of action against the Graffs does not establish that he had a cause of action against their insurer.

¶15 Two decades before the *Cook* decision, the Supreme Court ordered the reformation of an insurance policy rather than provide a vendor, who was not a named insured, with a cause of action to enforce an equitable lien directly against an insurer. *See Robbins v. Milwaukee Mechs.' Ins. Co.*, 102 Wash. 539, 173 P. 634 (1918). In *Robbins*, a covenant included in a conditional sale agreement required the vendee to insure the subject property on behalf of Robbins, the vendor. However, before the vendee obtained such insurance, a third party purchased the property and obtained an insurance policy in its own name. Robbins still held title to the property when it was destroyed by fire, and there was evidence that the insurer "had, or might have obtained, knowledge" of Robbins' ownership interest. *Robbins*, 102 Wash. at 543-44. However, the insurer refused to pay the insurance policy proceeds to any party. Robbins sought an injunction to prevent the insurer from paying the proceeds to anyone else and requested "that the insurance money be paid to her as her interest might appear." *Robbins*, 102 Wash. at 541.

¶16 The Supreme Court acknowledged that Robbins possessed an equitable lien on the insurance policy proceeds[7] because the "insurance money, which stood in the place of the property destroyed, in equity belonged to the

---

[6] Specifically, *Cook* provided the mortgagee with a cause of action to enforce an equitable lien directly against the receiver of the mortgagor, because the receiver's rights with respect to the insurance policy proceeds were equivalent to the rights of the mortgagor, "in whose shoes the receiver stands." *Cook*, 196 Wash. at 130.

[7] The covenant in the original sale agreement requiring the vendee to insure the subject property on behalf of Robbins also applied to the third party who purchased the property. The Supreme Court noted that the third party "took the property subject to all of the terms of the conditional sale agreement, including the covenant to insure" the property on behalf of Robbins. *Robbins*, 102 Wash. at 542.

owner of the property." *Robbins*, 102 Wash. at 544-45. However, the Supreme Court ordered the reformation of the insurance policy so that Robbins became a named insured, thus allowing her to obtain the insurance proceeds on that basis. *Robbins*, 102 Wash. at 544. The court opined that because the insurer had constructive notice of Robbins' equitable lien when it entered into the insurance contract, the insurer "ought not, in good conscience, . . . avoid paying the loss." *Robbins*, 102 Wash. at 544. The court's holding that reformation of the insurance policy to protect Robbins' interest as the true owner of the property was the appropriate remedy, rather than providing Robbins with a cause of action to enforce an equitable lien directly against the insurer, was consistent with the law as it then existed, as well as the law as it has developed over time.

¶17 In addition to his arguments based upon Washington case law, Geer relies upon common law decisions from other jurisdictions to argue that it is a "bedrock principle of equity" that a person who is not a named insured has a cause of action to enforce an equitable lien on insurance policy proceeds directly against an insurer. Geer asserts that this "bedrock principle of equity" provided him with a cause of action directly against Lloyd's. This argument fails, however, because courts in other jurisdictions that have recognized such a cause of action have generally premised their decisions upon the fact that the insurer was provided actual or constructive notice of the equitable lien, and then disregarded that notice by paying the policy proceeds to the named insured.[8]

¶18 Thus, even if it were a "bedrock principle of equity" that a person who is not a named insured has a cause of

---

[8] *See, e.g., Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949, 951-52 (5th Cir. 1978) (applying Florida law); *Robinson v. Breuninger*, 152 Kan. 644, 107 P.2d 688, 692 (1940); *Nw. Fire & Marine Ins. Co. of Minneapolis v. N.Y. Life Ins. Co.*, 238 Ky. 229, 37 S.W.2d 67, 69 (1931); *Employers Mut. Cas. Co. v. Standard Drug Co.*, 234 So. 2d 330 (Miss. 1970); *Cromwell v. Brooklyn Fire Ins. Co.*, 44 N.Y. 42, 48 (1870); *Gibbes Mach. Co. v. Niagara Fire Ins. Co.*, 119 S.C. 1, 111 S.E. 805, 806 (1922); *Fid. & Guar. Ins. Corp. v. Super-Cold Sw. Co.*, 225 S.W.2d 924, 927 (Tex. App. 1949). *But see Farmers' Loan & Trust Co. v. Penn Plate-Glass Co.*, 103 F. 132, 151-52 (3d Cir. 1900) (applying Pennsylvania law), *aff'd*, 186 U.S. 434, 22 S. Ct. 842, 46 L. Ed. 1234 (1902).

action to enforce an equitable lien directly against an insurer that has paid the policy proceeds to the named insured despite actual or constructive knowledge of the equitable lien,[9] Geer's interest would not fall within the rule.[10] Geer did not provide Lloyd's with notice of his equitable lien until after the house was destroyed by fire. Moreover, Lloyd's refused to pay the insurance proceeds to the named insured, the Graffs, for a variety of reasons independent of the one-year suit limitation period.

¶19 As noted by Tonnon, no statute, reported decision, or "bedrock principle of equity" in Washington provides a person who is not a named insured with a cause of action to enforce an equitable lien directly against an insurer. The doctrine of equitable liens has not been codified by the legislature, and common law provides that an equitable lien may be enforced only against the named insured. *See Cook*, 196 Wash. at 136. The general rule is that an insurance policy is a personal contract between the insurer and the named insured. *See Nelson*, 171 Wash. at 63 ("[A] fire insurance policy is a purely personal contract, and ... payment by the insurer to the insured named in a policy is compulsory."). *See also Davis v. Or. Mut. Ins. Co.*, 71 Wn.2d 579, 580, 429 P.2d 886 (1967) ("The rule is that a policy of fire insurance is a personal contract and does not run with

---

[9] The rule has not been adopted in Washington, despite the opportunity presented by the *Robbins* case. In *Robbins*, the insurer had constructive notice of the vendor's equitable lien on the insurance policy proceeds but refused to pay the insurance proceeds to any party. Rather than provide the vendor with a cause of action to enforce the equitable lien directly against the insurer to obtain the policy proceeds, the Supreme Court held that reformation of the insurance policy was the appropriate remedy.

[10] The rule in several states is that an insurer that has paid "the proceeds of insurance to the insured with knowledge of the existence of the mortgagee's equitable lien on the proceeds is liable to the mortgagee for the loss sustained by him or her." Russ & Segalla, *supra*, § 65:88, at 65-120. However, "[w]hether or not the insurer is liable to the mortgagee for having made payment to the insured" with knowledge of the mortgagee's equitable lien, the general rule is that "the mortgagee may assert against the insured his or her equitable right to the proceeds." Russ & Segalla, *supra*, § 65:88, at 65-120. Significantly, *Couch on Insurance 3D* does not provide that a person who is not a named insured may enforce an equitable lien directly against an insurer that has refused to pay the insurance policy proceeds to any party, as Geer argues in this case. *See* Russ & Segalla, *supra*, §§ 65:82-:88.

the land."); *CLS Mortgage, Inc. v. Bruno*, 86 Wn. App. 390, 396, 937 P.2d 1106 (1997) ("Fire insurance is a personal contract and does not run with the land."). Thus, had Lloyd's paid the insurance policy proceeds to the Graffs, Geer could have enforced the equitable lien in a lawsuit against the Graffs. However, Geer had no independent cause of action directly against Lloyd's.

¶20 Because no statute, reported decision, or "bedrock principle of equity" provided Geer with a cause of action to enforce an equitable lien directly against Lloyd's, Geer fails to demonstrate that he would have obtained a favorable judgment against Lloyd's had Tonnon filed suit within the one-year limitation period. Thus, Geer's legal professional negligence claim against Tonnon based upon the equitable lien theory was properly dismissed for absence of proof on the element of causation. *Sherry v. Diercks*, 29 Wn. App. 433, 442, 628 P.2d 1336 (1981).

IV. *Geer's Legal Negligence Claim against Tonnon Based upon the Retroactive Endorsement Fails for Lack of Expert Testimony*

¶21 The trial court ruled that Geer's legal professional negligence claim against Tonnon based upon the retroactive endorsement failed because Geer did not provide expert testimony or other evidence to show that Tonnon's failure to file suit under this theory constituted a breach of Tonnon's duty of care, or that this breach was the cause in fact of Geer's claimed damages. The trial court's ruling was correct.

¶22 To establish a legal professional negligence claim against Tonnon premised upon the retroactive endorsement, Geer must prove that Tonnon's failure to file suit against Lloyd's within the one-year limitation period based upon the endorsement breached Tonnon's duty of care to Geer, and that this breach was the cause in fact of Geer's claimed damages. In order to breach his duty of care, Tonnon must fail to exercise "the degree of care, skill, diligence, and knowledge commonly possessed and exer-

cised by a reasonable, careful, and prudent lawyer in the practice of law" in this state. *Hizey*, 119 Wn.2d at 261. Expert testimony is often required to determine whether an attorney's duty of care was breached in a legal professional negligence action, because the "[l]aw is admittedly a highly technical field beyond the knowledge of the ordinary person." *Lynch v. Republic Publ'g Co.*, 40 Wn.2d 379, 389, 243 P.2d 636 (1952).

¶23 Geer never provided Tonnon with notice of the retroactive endorsement issued by the insurance underwriter following the fire. As a result, expert testimony was necessary to establish that Tonnon breached the duty of care owed to Geer by failing to independently discover the existence of the endorsement, a fact that his client failed to disclose to him, in order to commence suit to enforce the endorsement against Lloyd's within the one-year limitation period. However, Geer failed to proffer any such expert testimony. Thus, there was no evidence that attorney Tonnon breached any applicable duty to Geer.

¶24 In addition, Geer failed to provide expert testimony or other evidence to demonstrate that such a breach of Tonnon's duty of care was the cause in fact of Geer's claimed damages. Specifically, Geer introduced no evidence to show that had Tonnon discovered the retroactive endorsement and filed suit seeking its enforcement against Lloyd's within the one-year limitation period, Geer would have obtained a favorable judgment against Lloyd's. Geer's assertion that Tonnon erred, without evidence that Geer would have obtained a favorable judgment at trial in the absence of the error, is insufficient to withstand Tonnon's motion for summary judgment.[11] *Halvorsen v. Ferguson*, 46 Wn. App. 708, 721-22, 735 P.2d 675 (1986). Accordingly, the

---

[11] Geer argues that the trial court should have confined itself to deciding "whether or not a cause of action relating to a retroactive endorsement to an insurance policy was viable as a matter of law," Br. of Appellants at 17, and not concerned itself with issues of duty and causation. Geer is wrong. To defeat Tonnon's summary judgment motion, Geer was required to introduce evidence on every element of his claim. *Young*, 112 Wn.2d at 225-26; *Hizey*, 119 Wn.2d at 260-61.

trial court correctly ruled that Geer's legal professional negligence claim based upon the retroactive policy endorsement failed as a matter of law.

¶25 We affirm the trial court's ruling granting Tonnon's motion for summary judgment. Geer did not demonstrate that an error of Tonnon's was a cause in fact of his claimed damages because, even had Tonnon filed suit within the one-year limitation period based upon the equitable lien theory, Geer would not have obtained a favorable judgment against Lloyd's. Geer also did not provide necessary expert testimony or other evidence to demonstrate that Tonnon's failure to file suit against Lloyd's based upon the retroactive endorsement either constituted a breach of Tonnon's duty of care or was itself a cause in fact of Geer's claimed damages.

¶26 Affirmed.

APPELWICK, C.J., and SCHINDLER, J., concur.