**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| BRADFORD BALINT and DANICE BALINT, husband and wife, | No. 50685-8-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL J. WYNNE and MARY S. WYNNE, individually, and as husband and wife, and MICHAEL J. WYNNE, P.S., | |
| Respondents. | |

MAXA, C.J. – Bradford and Danice Balint appeal the trial court's order granting summary

judgment in favor of Michael and Mary Wynne and Michael J. Wynne, P.S. (collectively

Wynne) on the Balints' legal negligence claim. The claim arose after attorney Wynne drafted a

quitclaim deed for execution by David Balint, Bradford's[1] father, a few days before David died

of cancer. The deed conveyed to the Balints, without consideration, property that David owned.

A court subsequently quieted title to the property in David's estate on the grounds that

the Balints, who had moved into David's house to care for him, had exerted undue influence on

David in the execution of the deed. The Balints then filed suit against Wynne, alleging that he

was negligent in failing to recognize a conflict of interest in representing both them and David

---

[1] This opinion refers to individuals with the last name of Balint by their first names to avoid confusion. No disrespect is intended.

and in not advising them about a possible undue influence claim. The trial court granted summary judgment in favor of Wynne, ruling that the Balints had failed to produce required expert testimony showing that Wynne breached a duty. The court later denied the Balints' combined motion for reconsideration and motion to admit additional evidence: an expert declaration stating an opinion that Wynne had breached his duty of care.

We hold that (1) the trial court did not err in granting summary judgment in favor of Wynne when the Balints did not submit expert testimony stating that Wynne had breached the standard of care owed to the Balints, and (2) the Balints' motion for reconsideration and to admit additional evidence was untimely under CR 59(b) because it was filed more than 10 days after the trial court entered its summary judgment order. Accordingly, we affirm the trial court's summary judgment and reconsideration orders.

## FACTS

*Background*

The Balint family had a long history of working with Wynne. Wynne represented David, David's mother, and the Balints.

In mid-2004, David was diagnosed with esophageal cancer. He was told that he had between a year and 18 months to live. David and the Balints informed Wynne of David's medical situation.

In September, Bradford directed Wynne to draft health care and financial powers of attorney for David naming the Balints as attorneys in fact for David. At a September 22 meeting involving David, the Balints and Wynne, David executed powers of attorney placing the Balints in charge of his financial and personal affairs. The same day, the Balints each executed a power of attorney and a healthcare directive that Wynne had prepared for them. Wynne invoiced David and the Balints separately for those services.

On November 2, David's mother deeded to him real property consisting of approximately 9.08 acres in Ridgefield. Wynne drafted the deed. David lived in a structure on the property. Later in November, the Balints moved into a different structure on the property to care for David.

In approximately August 2005, David became much more infirm. The Balints began calling Wynne, at David's request, to schedule an appointment to draft a deed for David to transfer the Ridgefield property to the Balints.

David was hospitalized for pneumonia and congestive heart failure from September 11 to September 15. The hospital discharged David into hospice care at the Balints' home. David was taking a number of medications, including morphine, that affected his mental state. David was forgetful, confused, fatigued, and weak.

On September 27, Wynne came to the Balints' home so David could sign the quitclaim deed. David was in a hospital bed, next to which was a table full of medications. Wynne met privately with David. David told Wynne that he wanted to transfer the property and that he understood what he was signing. David then executed the quitclaim deed, which gifted the Ridgefield property to the Balints without consideration.

Wynne did not have any conversation with the Balints about David's medical situation. He did not ask them about David's illness, why he was in a hospital bed, or why he was surrounded by medications. Wynne also did not interview David to determine whether he had the capacity to sign the deed. Wynne did not learn and was not informed that David was receiving hospice care for terminal cancer, that David had been confused since his discharge from the hospital, or that David was taking medication that could affect his mental state.

Wynne did not discuss with the Balints the risk that the quitclaim deed might be challenged by Bradford's siblings on the grounds that the Balints had unduly influenced David.

3

Wynne also did not express any concern about whether the Balints had a fiduciary or confidential relationship with David.

David died on October 2. His will, executed in 1993, had disinherited Bradford. A court appointed Jason Balint, David's other son, as the personal representative of David's estate.

*Voiding of Quitclaim Deed*

In June 2006, Jason, acting as the personal representative of David's estate, filed a complaint against the Balints to quiet title to the Ridgefield property in the estate. The estate alleged that the quitclaim deed was void because David was incompetent on the date of execution. The estate also alleged that the Balints had breached their fiduciary duties to David and exercised undue influence over him.

After a bench trial, the court concluded that the Balints had breached their fiduciary duty to David by obtaining the quitclaim deed. The court ruled that the Balints had failed to meet their burden at trial, imposed on them because they had a confidential relationship with David, to establish that the quitclaim deed was valid. The court also concluded that Wynne did not adequately advise David before he signed the quitclaim deed, that David did not execute the deed with a full understanding of the facts, and that David lacked capacity to execute the documents.

As a result, the court ruled that title to the Ridgefield property was quieted in favor of the estate and required the Balints to sign a quitclaim deed transferring title to the estate. The court also required the Balints to pay $50,000 in attorney fees to the estate.

*Legal Negligence Lawsuit and Summary Judgment*

In July 2011, the Balints filed a complaint against Wynne, alleging legal negligence. The Balints asserted two claims: (1) Wynne had a conflict of interest because he represented both David and them, Wynne did not disclose the conflict, and Wynne did not advise them to seek

independent counsel before David deeded them the property; and (2) Wynne was negligent in failing to advise them that there was a potential allegation that they had exerted undue influence over David and in failing to advise them that they were in a confidential and fiduciary relationship with David.

In his subsequent deposition, Bradford testified that David was not incapacitated when he executed the quitclaim deed. He stated that David had the mental capacity to convey the property and that David was of sound mind. Bradford also testified that the court ruling in the quiet title lawsuit was wrong and that he and his wife did not exert undue influence over David.

Wynne filed a summary judgment motion. His primary argument was that the Balints could not show a breach of duty without expert testimony establishing the standard of care with which he was required to comply.[2] In response, the Balints argued that the evidence created a question of fact regarding Wynne's negligence and that expert testimony was not necessary. The Balints did not submit any expert testimony regarding the standard of care.

On May 3, 2017, the trial court filed a written memorandum opinion and order granting Wynne's summary judgment motion. The court stated that the evidence was sufficient to show that Wynne owed a duty to the Balints in performing legal services. However, the court ruled that the Balints had failed to produce competent evidence that Wynne had breached that duty. The court stated that expert testimony was required under the facts of the case to establish the standard of care and how Wynne breached that standard. The trial court scheduled a presentation of the judgment of dismissal for May 19.

---

[2] Wynne also argued that the Balints could not show that any breach of duty was the proximate cause of any damages. The trial court denied summary judgment on proximate cause.

*Motion for Reconsideration and for Admission of Additional Evidence*

On May 17, the Balints filed a motion for reconsideration and for admission of additional evidence. The Balints sought to admit the declaration of James Senescu, an attorney with expertise in estate planning and matters relating to elder law. In the declaration, Senescu stated his opinion that Wynne owed a duty to the Balints to make sure that they would not be adversely affected by the quitclaim deed. Senescu stated that Wynne knew or should have known that, because of the Balints' relationship with David, the property could be deemed transferred under undue influence. He believed that Wynne should have taken steps to determine whether David was free from undue influence, including seeking independent counsel to assist. As a result, Senescu offered the opinion that Wynne had breached his duty of care.

Wynne moved to strike the Balints' motion as untimely under CR 59(b) and Clark County Local Civil Rule (LCR) 59(b) because it was not filed within 10 days after the trial court filed its summary judgment order. In supplemental briefing, Wynne also argued that the trial court should not consider Senescu's declaration on reconsideration because it was not newly discovered evidence.

The trial court opted not to decide the motion on procedural grounds, even though the court stated that the motion probably was untimely. Instead, the court denied the motion for reconsideration because Senescu's declaration did not qualify as newly discovered evidence. The court then entered a judgment of dismissal.[3]

The Balints appeal the trial court's grant of summary judgment in favor of Wynne and the trial court's denial of their motion for reconsideration.

---

[3] The Balints filed a second motion for reconsideration, which the trial court denied. The Balints do not appeal that ruling.

ANALYSIS

A.    FAILURE TO ESTABLISH LEGAL NEGLIGENCE

The Balints argue that the trial court erred in granting summary judgment in favor of Wynne.  They claim that expert testimony was not required to establish a question of fact regarding whether Wynne breached a duty he owed to them.  We disagree.

1.    Standard of Review

We review a trial court's ruling on summary judgment de novo.  *Schibel v. Eymann*, 189 Wn.2d 93, 98, 399 P.3d 1129 (2017).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* CR 56(c).  When evaluating the evidence on summary judgment, we must view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Piris v. Kitching*, 185 Wn.2d 856, 861, 375 P.3d 627 (2016).  A factual issue may be resolved as a matter of law on summary judgment if reasonable minds could reach only one conclusion. *Halme v. Walsh*, 192 Wn. App. 893, 901, 370 P.3d 42 (2016).

A defendant can move for summary judgment based on the contention that there is an absence of evidence to support the plaintiff's claim.  *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017).  The burden then shifts to the plaintiff to present specific facts that rebut the defendant's contention and show a genuine issue of material fact.  *Id.*  Summary judgment is appropriate if a plaintiff fails to present sufficient evidence on all essential elements of the claim.  *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC*, 180 Wn. App. 689, 699, 324 P.3d 743 (2014).

2.    Legal Background

A legal negligence claim requires proof of four elements: (1) the existence of a duty of care the attorney owes to the plaintiff, (2) the attorney's breach of that duty of care, (3) damage to the plaintiff, and (4) proximate causation between the breach of duty and the damage.    *Clark County Fire Dist.*, 180 Wn. App. at 700-01; *see also Arden v. Forsberg & Umlauf, PS*, 189 Wn.2d 315, 323, 402 P.3d 245 (2017).  The standard of care for an attorney is to " 'exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law' in Washington.' " *Arden*, 189 Wn.2d at 328 (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992)).

When the alleged negligence is an error of professional judgment, we apply the attorney judgment rule in determining when the judgment decision breaches an attorney's duty of care. *Clark County Fire Dist.*, 180 Wn. App. at 701, 704.  Under this rule, an attorney cannot be liable if a judgment decision was "within the range of reasonable alternatives from the perspective of a reasonable, careful, and prudent attorney" and the attorney exercised reasonable care in making that decision. *Id.* at 704.

The existence of a duty is a question of law. *Arden*, 189 Wn.2d at 323.  Here, the trial court ruled that there was sufficient evidence of a relationship between Wynne and the Balints to create a duty of care.[4]  Wynne does not challenge this ruling, and therefore we do not address the existence of a duty.

---

[4] Even if the Balints technically were not Wynne's clients regarding execution of the quitclaim deed, under certain circumstances an attorney can owe a duty of care to nonclients.  *See Stewart Title Guar. Co. v. Sterling Sav. Bank*, 178 Wn.2d 561, 565-66, 311 P.3d 1 (2013) (recognizing a multifactor test for determining whether an attorney can be liable to a nonclients for malpractice).

Whether an attorney has breached the duty of care generally is a question of fact. *Clark County Fire Dist.*, 180 Wn. App. at 705. But an attorney can obtain summary judgment on breach of duty if reasonable minds can reach only one conclusion. *Id.*

### 3. Need for Expert Testimony

The issue here is whether the Balints presented sufficient evidence that Wynne breached the duty of care. Resolution of this issue depends on whether the Balints were required to present expert testimony on the standard of care.

#### a. Legal Principles

The Supreme Court recognized in *Walker v. Bangs* that expert testimony may be required to establish a breach of duty in legal negligence claims:

> Law is admittedly a highly technical field beyond the knowledge of the ordinary person. By its very nature, an action for professional negligence in the preparation and conduct of specific litigation involves matters calling for special skill or knowledge – proper subjects for expert testimony.

92 Wn.2d 854, 857-58, 601 P.2d 1279 (1979) (citation omitted).

However, the court in *Walker* did not adopt a rule that expert testimony on the standard of care was mandatory. *Id.* at 858. Instead, the court stated that "expert testimony is not necessary when the negligence charged is within the common knowledge of lay persons." *Id.* Courts more recently have confirmed this rule. *Slack v. Luke*, 192 Wn. App. 909, 916-17, 370 P.3d 49 (2016); *Geer v. Tonnon*, 137 Wn. App. 838, 851, 155 P.3d 163 (2007).

But the court in *Geer* also emphasized that "[e]xpert testimony is *often required* to determine whether an attorney's duty of care was breached in a legal professional negligence action." 137 Wn. App. at 851 (emphasis added); *see also Clark County Fire Dist.*, 180 Wn. App. at 705 n.5 (stating that "a plaintiff generally must present expert testimony that the attorney

breached the standard of care" in a legal negligence case). The Supreme Court noted the importance of expert testimony to establish a legal negligence claim:

> The expert must testify generally as to ethical requirements, concluding the attorney's violations of the ethical rules constituted a deviation from the legal standard of care. Without this evidentiary link, the plaintiff risks dismissal of the malpractice case for failure properly to establish the breach of the duty of care.

*Hizey*, 119 Wn.2d at 265.

When expert testimony is required and not provided, there is insufficient evidence that the attorney breached any applicable duty and the attorney is entitled to summary judgment. *See Geer*, 137 Wn. App. at 851-52.

> b.    Conflict of Interest Claim

The Balints alleged in their complaint that Wynne had a conflict of interest because he represented both David and them, that Wynne did not disclose the conflict, and that Wynne did not advise them to seek independent counsel before David deeded them the property. The Balints argue that lay persons can understand the concept of a conflict of interest without the need for expert testimony. We disagree.

First, lay persons would not necessarily know without expert testimony whether Wynne had a conflict of interest under the facts of this case. The Rules of Professional Conduct (RPCs) provide rules regarding conflicts of interest. *E.g.*, RPC 1.7, 1.8, 1.9. The Balints relied on the RPCs in the trial court in opposing summary judgment. But the RPCs do not set the standard of care in legal negligence actions. *LK Operating, LLC v. Collection Group, LLC*, 181 Wn.2d 48, 90, 331 P.3d 1147 (2014); *see also Hizey*, 119 Wn.2d at 258-59. In fact, violation of the RPCs may not even be used as evidence of malpractice and jury instructions may not refer to the RPCs. *Hizey*, 119 Wn.2d at 259-60, 265-66. Instead, experts must address the legal standard of care without explicitly referencing the RPCs. *Id.* at 265.

Here, without any guidance from the RPCs or expert testimony, a lay person could have concluded that there was no conflict of interest. Wynne had done legal work for both David and the Balints. And both David and the Balints had an interest in the deed Wynne drafted for David's execution. But there was no apparent *conflict* between David and the Balints. The Balints actually requested that Wynne draft the deed for David to execute. David and the Balints appeared to be working together to accomplish something they both wanted – transfer of David's property to the Balints.

The Balints apparently claim that David's questionable competence and the potential that undue influence could be found created a conflict of interest even though the parties appeared to have a common interest. This complex conflict of interest claim is not something that lay persons would be able to evaluate without expert assistance. And the Balints provided no actual evidence on summary judgment to support their allegation that Wynne had a conflict of interest. Therefore, expert testimony was required to create a question of fact on the existence of a conflict of interest.

Second, lay persons would not necessarily know the standard of care for an attorney who represented the grantor in drafting a quitclaim deed and also represented the grantees on other matters. The Balints argue that Wynne was required to disclose his representation of David to them, but they obviously knew that Wynne was representing David regarding the deed because they procured his representation. In addition, while the Balints claim that Wynne should have advised them to seek independent counsel, a lay person would not be able to evaluate this claim without expert assistance. And the Balints provided no actual evidence on summary judgment to support their allegation that Wynne had certain obligations relating to the alleged conflict of

interest. Therefore, expert testimony was required to create a question of fact on a reasonable, careful, and prudent attorney's course of action even if there was a conflict of interest.

c. Failure to Advise Claim

The Balints alleged in their complaint that Wynne was negligent in failing to advise them that (1) there could be a potential allegation that they had exerted undue influence over David and (2) they were in a confidential and fiduciary relationship with David. The Balints argue that lay persons can understand that when there is a legal concept that must be discussed with a client, the failure to discuss that concept is negligent. We disagree.

Wynne was drafting a quitclaim deed at David's request that would benefit the Balints, who he also had represented on estate planning matters. And Wynne knew that David had cancer and that the Balints had been caring for him. The trial court ruled that Wynne owed the Balints a duty based on his relationship with them even though he technically did not represent them regarding the quitclaim deed. But Wynne's obligation to advise the Balints regarding undue influence and confidential and fiduciary relationships is a complex question that lay persons could not answer without expert assistance. And the Balints provided no actual evidence on summary judgment to support their allegation that Wynne was required to advise the Balints regarding these matters. Therefore, expert testimony was required to create a question of fact on a reasonable, careful, and prudent attorney's course of action in this scenario.

d. Alleged Plaintiff's Dilemma

Finally, the Balints argue that a plaintiff in a legal negligence action is placed in the difficult position of having to guess whether expert testimony will be required in a particular case. However, in any case a plaintiff must determine what evidence is necessary to establish a claim. And case law makes it clear that a plaintiff in a legal negligence action runs the risk of

12

having the action dismissed on summary judgment if no expert testimony is presented. *See Hizey*, 119 Wn.2d at 265.

Further, here Wynne's summary judgment motion was expressly based on the absence of expert testimony to support the Balints' claims. The Balints were on notice that they may need to retain an expert at that time to address Wynne's breach of duty, as they did on reconsideration.

### 4. Summary

Because of the complexities of the Balints' claims that Wynne breached a duty of care, the Balints were required to present expert testimony on that issue to avoid summary judgment. The Balints did not produce any expert testimony before the court granted Wynne's summary judgment motion. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Wynne.

### B.    MOTION FOR RECONSIDERATION

The Balints argue that the trial court erred in declining to consider their expert declaration submitted on reconsideration and therefore erred in denying their motion for reconsideration. Wynne argues that the motion for reconsideration was untimely. We agree with Wynne.

CR 59(b) states that a motion for reconsideration "shall be filed not later than 10 days after the entry of the judgment, order, or other decision." The rule was amended in 2005 to add the "order, or other decision" language. CR 6(b) states that a court cannot extend the time for taking action under CR 59(b). Therefore, trial courts have no discretionary authority to extend the time period for filing a motion for reconsideration. *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993).

Here, the trial court's summary judgment order was not a "judgment." CR 54(a)(1) defines a judgment as the written "final determination of the rights of the parties in the action

and includes any decree and order from which an appeal lies." The trial court did not enter a judgment of dismissal when it granted summary judgment.

The question here is whether the trial court's summary judgment order constituted an "order" for purposes of CR 59(b). CR 54(a)(2) defines an order as "[e]very direction of a court or judge, made or entered in writing, not included in a judgment[.]" An order generally contains a formal caption and is formally labeled as an order. *In re Marriage of Tahat*, 182 Wn. App. 655, 672, 334 P.3d 1131 (2014).

Here, the trial court's summary judgment order was in writing, was filed as a pleading that included a formal caption, and was specifically identified as a "Memorandum of Opinion *and Order* Deciding Defendants' Motion for Summary Judgment." Clerk's Papers (CP) at 147 (emphasis added). Further, the contents contained a heading entitled "Order" and the following language:

> Based on the records and files herein, and the decision noted above, and the court being fully advised, now, therefore, it is hereby ORDERED as follows:
>
> 1. Defendants' motion for summary judgment, filed March 29, 2017, as it concerns the issue of breach of duty, is granted.

CP at 151-52. This summary judgment order was a written direction by the trial court not included in a judgment and therefore satisfied the definition of "order" in CR 54(a)(2).

The Balints argue that only a final or appealable judgment, order, or other decision triggers the 10 day filing requirement under CR 59(b). But CR 59(b) does not contain such limiting language. And an order and certainly an "other decision," as distinguished from a judgment, almost always will not be final or appealable. The Balints' proposed interpretation would render the phrase "order, or other decision" in CR 59(b) virtually meaningless. We interpret the rule to give effect to all the language used without rendering any portion

meaningless or superfluous. *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010).

The Balints also emphasize that when the trial court filed its summary judgment order, the court expressly recognized that a final judgment still needed to be entered and scheduled the presentation for such a judgment. But this fact is irrelevant. The plain language of CR 59(b) provides that a party must file a motion for reconsideration within 10 days from the judgment *or* order challenged. Once again, the Balints' proposed interpretation of the rule would render meaningless the requirement that a party must file its motion to reconsider an order within 10 days from the entry of that order.

We hold that the trial court's summary judgment order constituted an "order" for purposes of CR 59(b) and therefore that the Balints were required to file their motion for reconsideration within 10 days after that order was filed.[5] It is undisputed that the Balints did not file their motion for reconsideration until 14 days after the trial court filed the summary judgment order. Accordingly, we hold that the motion for reconsideration was untimely.[6]

---

[5] The Balints also argue that the 10 day requirement does not apply to its motion for admission of additional evidence. However, the motion to admit additional evidence was part of the motion for reconsideration. And apart from the motion for reconsideration, the motion to admit additional evidence would have been meaningless because the trial court already had granted summary judgment.

[6] Even if the Balints' motion had not been untimely, the trial court did not err in declining to consider Senescu's declaration on the ground that it did not qualify as newly discovered evidence under CR 59(a)(4). The Balints acknowledge that Senescu's declaration could have been obtained before the summary judgment hearing. The decision to consider new or additional evidence on reconsideration "is squarely within the trial court's discretion." *Martini v. Post*, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).

CONCLUSION

We affirm the trial court's summary judgment and reconsideration orders.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____

MAXA, C.J.

We concur:

_____

WORSWICK, J.

_____

JOHANSON, J.